ROSE GARCIA, Plaintiff-Appellant, v. EDWARD J. ROSEWELL, Treasurer of Cook County, Defendant-Appellee and Third-Party Plaintiff.—(ARTHUR DUNAS, Third-Party Defendant-Appellee.)

First District (4th Division)   No. 62644

Opinion filed October 20, 1976.

Bernard Allen Fried, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellee Edward J. Rosewell.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The plaintiff, Rose Garcia, appeals from a judgment of the Circuit Court of Cook County which denied her petition for indemnity from the Treasurer of Cook County pursuant to the provisions of section 247a of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 728a) for the loss of title to her property by reason of the issuance of a tax deed. The judgment also dismissed the third-party complaint filed by the Treasurer of Cook County against Arthur Dunas.

The issues for review are whether the plaintiff is "without fault or negligence" as required by the statute and whether the plaintiff had sufficient financial resources to redeem her property.

Rose Garcia lived with her family at 9117 South Buffalo Avenue in the city of Chicago from 1957 until 1974. She and her husband failed to pay their 1969 and 1970 tax bills totalling approximately $400 because of the financial strain caused by the long illness of Mr. Garcia which culminated in his death in February of 1974. Mr. Garcia had worked for the Wisconsin Steel Company but was unable to work in the final several years prior to his death. Mrs. Garcia was not able to work because she had to take care of her husband and their nine children.

The property was sold by the Cook County Collector for failure to pay the 1969 taxes, and a tax certificate issued and assigned to Ruth Lubershane, who held it for Max Lubershane and Arthur Dunas. The 1970 taxes were unpaid and the Collector sold the property and a tax certificate issued and assigned to Thornton Ltd. Thornton obtained a tax deed pursuant to law after notice was served upon the plaintiff and her husband on or about November 10, 1973. In September of 1973, Arthur Dunas visited Mrs. Garcia and told her he had bought the property for the 1969 taxes and she would have to buy the property back from him. He apparently showed her the tax certificate which she believed to be a deed to the property. She told him she wanted to pay the taxes, but he said it could not be done. He told her he would have a contract drawn up and she could buy the house back for payments of $100 per month.

Mrs. Garcia testified as follows:

"I says, 'But I am willing to try to pay all the taxes back. Would you sell me the house back on the back taxes?' And he said, 'No,' he says, 'What I can do is sell you the house for $7,000.' "

Mrs. Garcia made four payments to Dunas of $100 for which she received receipts indicating the amounts were to be applied to purchase. She stopped making payments in January of 1974 when a woman, apparently representing Thornton Ltd., visited her and told her to stop.

In fact, Arthur Dunas had nothing more than the tax certificate for the 1969 taxes and never obtained a tax deed. Thornton Ltd., however, followed the statutory procedures including giving notice to Mr. and Mrs.

Garcia, and obtained a tax deed based on the purchase of the 1970 taxes. The notices received by the Garcias between November 10 and November 15 of 1973 stated the property had been sold for delinquent 1970 taxes and urged redemption by March 13, 1974, to prevent loss of the property. It also stated that further information could be obtained by contacting the County Clerk. The estimated cost of redeeming the property from Thornton Ltd. at that time was $402.16. The plaintiff did not redeem the property, and a tax deed was issued to Thornton Ltd.

On June 21, 1974, the plaintiff filed a petition for indemnity from the Treasurer of Cook County, as provided for in section 247a of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 728a), and on January 30, 1975, the Treasurer filed a third-party complaint against Arthur Dunas, alleging that if the Treasurer were found to be liable to the plaintiff, such liability was caused solely by the fraud and deceit of Arthur Dunas.

In directing the verdict for the defendant the trial judge stated that Mrs. Garcia's failure to pursue the notices received when Thornton Ltd. made an application for the tax deed constituted negligence and that the loss of the property was caused by the failure of the financial resources of the Garcia family.

Whether Mrs. Garcia's conduct in not responding to the notices constituted "fault or negligence" for the purposes of this statute is a question of first impression. The section of the statute upon which the plaintiff relies states as follows:

> "Any owner of real estate sold pursuant to any provision of this Act at a sale held subsequent to September 1, 1970, who without fault or negligence of his own sustains loss or damage by reason of the issuance of a tax deed pursuant to Sections 266 or 266a, and who is barred or in any way precluded from bringing an action for the recovery of such real estate has the right to indemnity for the loss or damage sustained. Indemnity shall be limited to the fair cash value of the real estate as of the date that the tax deed was issued, less any mortgages or liens thereon." Ill. Rev. Stat. 1973, ch. 120, par. 728a(4).

■■ In order to give effect to the legislative intent of the term "without fault or negligence" this court may consider the reasons or necessity for the enactment, the contemporaneous conditions, existing circumstances, and the object sought to be obtained by the statute. (*Cherin v. R. & C. Co.* (1957), 11 Ill. 2d 447; *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233.) We note the legislature acted at a time when there was a public outcry as the result of tax buyers taking advantage of unsophisticated property owners who had fallen behind on their taxes and then had fallen prey to the complexities of the tax buying procedures despite their willingness and ability to redeem their property.

It is apparent we must evaluate the meaning of the term "without fault or negligence" against the policy of the Revenue Act which strongly favors placing property in the hands of those who are both willing and able to pay their taxes. The purposes of the Revenue Act with which we are concerned were summarized in the case of *City of Chicago v. City Realty Exchange, Inc.* (1970), 127 Ill. App. 2d 185, 189-90:

> "Sections of the Revenue Act which provide for certificates of purchase and for issuance of tax deeds are legislative means to encourage buyers at tax sales, increase collection of tax revenue by taxing authorities and free land to once again enter the stream of commerce and bear its aliquot share of the tax burden. *Cherin v. The R. & C. Co.*, 11 Ill. 2d 447, 452, 143 N.E.2d 235. It is said that tax sales have as their purpose coercion of negligent and unwilling citizens to pay their taxes. 85 CJS, Taxation, §744."

Section 266 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 747) specifically provides that the section shall be liberally construed so that tax deeds shall convey merchantable title.

There is little disagreement on the meaning of the term "negligence." It has been defined as that standard of care exercised by a reasonably prudent person under the circumstances of the case (*Swenson v. City of Rockford* (1956), 9 Ill. 2d 122), the failure to do something which a reasonably careful person would do, or doing something which a reasonably careful person would not do under circumstances similar to those shown by the evidence (*Haymes v. Catholic Bishop of Chicago* (1968), 41 Ill. 2d 336).

"Fault," on the other hand, is susceptible to various interpretations. It may be defined as the equivalent of negligence as stated in Black's Law Dictionary (4th ed. 1951):

> "Negligence; an error or defect of judgment or of conduct; any deviation from prudence, duty, or rectitude; any shortcoming, or neglect of care or performance resulting from inattention, incapacity, or perversity; a wrong tendency, course, or act; bad faith or mismanagement; neglect of duty.
>
>          * * *
>
> The word 'fault,' the primary lexical meaning of which is defect or failing, in the language of the law and in the interpretation of statutes signifies a failure of duty, and is the equivalent of negligence."

In workmen's compensation the word "fault" means failure of volition. *Anson v. Fisher Amusement Corp.* (1958), 254 Minn. 93, 93 N.W.2d 815.

For the purposes of the separate maintenance statute the court held in *Glover v. Glover* (1971), 132 Ill. App. 2d 284, that being without fault does

not mean a party must be totally blameless, but rather the person claiming the asserted right must not have purposefully failed in a duty or engaged in conduct that materially contributed to the disruption of the marital relation.

After reviewing the various meanings of the words "fault" and "negligence" we must conclude the legislature did not intend the terms be given technical meanings. To do so would be to render the statute meaningless, because only those who have run afoul of the provisions of the Revenue Act have reason to invoke this particular statute. The statute was apparently enacted to provide a remedy for the harsh results caused by the legislative policy which favors the collection of taxes and the merchantability of tax deeds. We think the purpose is to do equity.

■■ Therefore, we hold the meaning of "without fault or negligence" should be interpreted similar to the words "without fault" in the case of *Glover v. Glover* where the court held that a party need not be totally blameless, but the person claiming the asserted right must not have purposefully failed in a duty or engaged in conduct that materially contributed to the problem complained of. We emphasize that each case must be decided on its own facts.

■■ We conclude that Mrs. Garcia's failure to heed the notices did not constitute fault or negligence within the meaning of the statute. This is not a case where there was indifference or a wilful failure to act. It is a case of conscious fraud and deception where Arthur Dunas used an official document, a tax certificate, to induce Mrs. Garcia to believe he already owned the property. It is not surprising she was unconcerned about losing her property to Thornton Ltd. for the 1970 taxes when she believed Arthur Dunas already owned the property as a result of paying the 1969 taxes. The fact the statute contains a provision for the subrogation of rights of those receiving indemnity (Ill. Rev. Stat. 1973, ch. 120, par. 728a(5)) suggests the legislature intended to take action against the malfeasance of unscrupulous tax buyers who exploit the poor and unsophisticated property owner.

■■■ We also think it is proper to examine Mrs. Garcia's capacity for handling business dealings at a time when she was faced with the prospect of losing her home at the same time she had a dying husband and nine children to care for. Under such circumstances she cannot be held to the highest standard of business conduct. It should be noted the Collector filed a third-party action against Arthur Dunas, accusing him of fraud and deceit practiced upon Mrs. Garcia. The Collector, by this pleading, recognized her unfortunate situation and cannot claim she was negligent or at fault within the meaning of the statute.

■■ As to the second issue we find the failure to redeem the property was not the result of inadequate financial resources as stated by the trial

518

court, but was the result of Arthur Dunas' misrepresentations of his ownership of the property. The record is clear that the Garcia family did possess the resources which would have allowed them to redeem the 1970 taxes. The estimated cost of redemption was $402.16, and Mrs. Garcia paid Arthur Dunas $400 between September of 1973 and January of 1974. Mrs. Garcia testified they did not have the money to pay the taxes when they came due, but expected to pay when they were able to get disability and welfare checks, and the record established they did receive those checks. In addition, the record shows Mrs. Garcia paid the 1974 taxes on the property.

For these reasons, the judgment of the Circuit Court of Cook County is reversed and the case is remanded to the trial court with directions to determine the value of the property and enter judgment for the plaintiff accordingly, and to reinstate the third-party action.

Reversed and remanded, with directions.

JOHNSON, P. J., and BURMAN, J., concur.