*In re* APPLICATION OF COUNTY COLLECTOR.—(ELIZABETH M. DILLER, Petitioner-Appellee, *v.* BERNARD J. KORZEN, Treasurer of Cook County, Respondent-Appellant.)

First District (5th Division)   No. 77-63

Opinion filed April 21, 1978.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and J. Daniel Azulay, Assistant State's Attorneys, of counsel), for appellant.

Marshal I. McMahon, Timothy C. Klenk, and Robert C. Bonges, of Chicago (Pope, Ballard, Shepard & Fowle, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Respondent appeals from a judgment granting petitioner's petition for indemnity from the Treasurer of Cook County pursuant to the provisions of section 247a of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 728a) for the loss of title to Lot 28 of her property by reason of the issuance of a tax deed. Following a bench trial, judgment was entered for $38,640.00.

Although respondent raises two issues, the dispositive issue on this appeal is whether the finding by the trial court that petitioner was "without fault or negligence" as required by statute is against the manifest weight of the evidence.

We reverse the decision of the trial court.

The stipulated facts pertinent to our disposition are as follows:

Petitioner's husband, Kenneth J. Diller, died on August 29, 1970. From 1948, until the date of his death, Kenneth J. Diller and petitioner, his wife, lived in a two-story house at 9027 North Keystone Avenue, Skokie, Illinois. Subsequent to the death of her husband petitioner continued to occupy the premises as her home. The premises are situated on two lots, Lot 28 and Lot 29. Prior to August 29, 1970, Lots 28 and 29 were owned by petitioner and her husband as joint tenants. Upon the death of her husband, and by operation of law, petitioner became the sole owner of the real estate. The second installment of the real estate taxes for both lots for the tax year 1969 were due in September 1970, and petitioner failed to pay these taxes. On March 16, 1971, Lots 28 and 29 were sold for nonpayment of taxes. A certificate of purchase for Lot 29 was issued to Suburban Tax Lien while a certificate of purchase for Lot 28 was issued to Interstate Bond Company. Petitioner paid in two installments the 1970 real estate taxes for Lot 29. On or about December 15, 1971, petitioner paid the 1970 taxes and penalties due on Lot 28 and has paid all subsequent real estate tax bills which have become due with respect to both lots. On July 14, 1973, petitioner sent a check to Suburban Tax Lien to redeem her property and she received a certificate of cancellation of tax sale with respect to Lot 29 on or about July 23, 1973. On August 8, 1973, she was personally served by Interstate Bond Company with a notice of expiration of redemption period, with respect to Lot 28. She also received, on or about August 16, 1973, by mail, a copy of the same notice.

Between August 8, and August 16, 1973, petitioner returned to Interstate Bond Company a facsimile of the notice upon which she had superimposed the check to Suburban Tax Lien that she had sent on July 14, 1973, and had typewritten the words "This has been paid" to the left of the copy of the check. This document was returned to petitioner by mail August 16, 1973, after an employee of Interstate Bond Company wrote at the bottom of the document, "I have contacted the County building and they claim they have not received a deposit on this item. Virginia Traina." Interstate Bond Company assigned the certificate of purchase for Lot 28 to William B. Levy, trustee, who on December 4, 1973, substituted for Interstate Bond Company as petitioner for a tax deed to Lot 28. On April 18, 1974, the county clerk issued a tax deed on Lot 28 to William B. Levy, trustee.

At trial three witnesses testified, all on behalf of petitioner. The testimony of two of the witnesses is particularly relevant in this case.

### Petitioner Elizabeth M. Diller

On August 29, 1970, when her husband died, she was 62 years old. Her educational background included one or two years of college and a year of finishing school. Later she took some special courses in domestic arts and sciences, shorthand, real estate law and real estate. She took the real estate law course about eight years before her husband died and the real estate course about five or six years before her husband passed away. In 1958, she became employed by Rustoleum Corporation and worked there for a few years. Later, she worked for short periods of time at various department stores. During her husband's lifetime, he took care of all of the financial affairs. Even when he was ill he paid all of the bills. Following her husband's death, she believed she wrote out a check for $495 for the payment of taxes and left it with Mr. Dordek, attorney for her husband's estate. The check was never cashed. Before she received a letter dated April 26, 1974, from Mr. Blair she was not aware that her house was situated on two lots. Although she thought, when she received two bills each time an installment was due, one was an original and the other a receipt or duplicate, she paid both. After receiving notices regarding taxes due on the lots, she did not consult with either an attorney who was a family friend, or a real estate lawyer who lived next door to her because she "did not want to bother people or impose on friends." She was curious about what her taxes were and after receiving the notice from Interstate Bond Company, she made copies of the notice because "she figured she had to find out what it all was about." She was under a great deal of stress during her husband's illness and has continued to be subsequent to his death.

### Dr. Ronald Shlensky

He is a psychiatrist and examined petitioner on June 29, 1976, at his office. In his opinion she was psychotic at the time of the examination and at the time of her husband's death. Her psychosis would have affected her ability to understand and respond to the events around her in an organized fashion.

The trial court found that petitioner's loss of Lot 28 by reason of the issuance of a tax deed was not a result of her fault or negligence.

OPINION

The sole issue on this appeal is whether the finding of the trial court that petitioner was without fault or negligence in the loss of her property was against the manifest weight of the evidence.

The section of the statute upon which petitioner relies states as follows:

"Any owner of real estate sold pursuant to any provision of this Act at a sale held subsequent to September 1, 1970, who without *fault or negligence* of his own sustains loss or damage by reason of the issuance of a tax deed pursuant to Sections 266 or 266a, and who is barred or in any way precluded from bringing an action for the recovery of such real estate has the right to indemnity for the loss or damage sustained. Indemnity shall be limited to the fair cash value of the real estate as of the date that the tax deed was issued, less any mortgages or liens thereon." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 120, par. 728a(4).

The legislative intent of the term "without fault or negligence" has been interpreted in *Garcia v. Rosewell* (1976), 43 Ill. App. 3d 512, 517, 357 N.E.2d 559, 563, where the court stated:

"Therefore, we hold the meaning of 'without fault or negligence' should be interpreted similar to the words 'without fault' in the case of *Glover v. Glover* where the court held that a party need not be totally blameless, but the person claiming the asserted right must not have purposely failed in a duty or engaged in conduct that materially contributed to the problem complained of. *We emphasize that each case must be decided on its own facts.*" (Emphasis added.)

The court in that case concluded that petitioner's failure to heed the notices did not constitute fault or negligence within the meaning of the statute.

Petitioner argues that *Garcia* should be controlling in this case. We disagree. *Garcia* emphasized "that each case must be decided on its own facts." (43 Ill. App. 3d 512, 517.) Even though the court in *Garcia* noted that the statute was enacted "to provide a remedy for the harsh results

caused by the legislative policy which favors the collection of taxes and the merchantability of tax deeds" (43 Ill. App. 3d 512, 517) with a purpose of doing equity, petitioner herein has failed to demonstrate that she was without "fault or negligence" as is her burden under the statute.

In *Garcia* plaintiff failed to pay her 1969 and 1970 taxes. The Cook County collector sold the property for failure to pay 1969 taxes and a tax certificate issued to Ruth Lubershane, who held it for Max Lubershane and Arthur Dunas. The collector sold the property for unpaid 1970 taxes and a tax certificate issued to Thornton, Ltd. In September 1973, Arthur Dunas visited Mrs. Garcia and told her he had bought the property for 1969 taxes and she would have to buy the property back from him. He apparently showed her the tax certificate which she believed to be a deed to the property. She told him she wanted to pay the taxes, but he said it could not be done. They entered into a contract, whereby Mrs. Garcia made four monthly payments to Dunas to buy the house back. Thornton, Ltd., however, followed the statutory procedures including giving notice to Mr. and Mrs. Garcia, and obtained a tax deed based on the purchase of the 1970 taxes. The notices received by the Garcias between November 10 and November 15 of 1973, stated that the property had been sold for delinquent 1970 taxes and urged redemption by March 13, 1974, to prevent loss of property. Plaintiff did not redeem the property and a tax deed was issued to Thornton, Ltd. The court in *Garcia* stated:

> "We conclude that Mrs. Garcia's failure to heed the notices did not constitute fault or negligence within the meaning of the statute. This is not a case where there was indifference or a wilful failure to act. It is a case of conscious fraud and deception where Arthur Dunas used an official document, a tax certificate, to induce Mrs. Garcia to believe he already owned the property. It is not surprising she was unconcerned about losing her property to Thornton Ltd. for the 1970 taxes when she believed Arthur Dunas already owned the property as a result of paying the 1969 taxes." *Garcia v. Rosewell* (1976), 43 Ill. App. 3d 512, 517, 357 N.E.2d 559, 563.

Respondent seeks to distinguish *Garcia* for two reasons:

First: *Garcia* was decided partly on the basis that Arthur Dunas used an official document with which to defraud Mrs. Garcia and induce her into believing that he already owned the property. The record in the instant case does not indicate that it was ever alleged or proven that petitioner was the victim of fraud. Her failure to redeem her property was not caused by the factors of fraud or deception but because of inaction on her part. She should have redeemed Lot 28, pursuant to the notices sent by Interstate Bond Company.

Second: The *Garcia* court also referred to the fact that Mrs. Garcia

could not be held to the "highest standard of business conduct" while she was caring for a dying husband and nine children and was further faced with the prospect of losing her home. In the present case, the death of petitioner's husband two days before the due date of the 1969 taxes may be an excuse for failure to pay the bill; it cannot be an excuse for failure to redeem her property almost three years later.

Petitioner contends and the trial court found that she tried to do something about her tax situation but she was "not equipped to handle" it. However, when we examine petitioner's capacity for handling business transactions, we note that petitioner is not an uneducated person and had taken courses in real estate and real estate law. Furthermore, she had paid the 1970-72 taxes on Lots 28 and 29 and had redeemed Lot 29 before she received the Interstate Bond notice. After receiving the notice she was curious about what her taxes were and she made copies of the Interstate Bond notice because she "figured * * * [she] had to find out what it was all about." Petitioner sent one copy back to Interstate Bond with a copy of her check to Suburban Tax Lien Company superimposed thereon, and with the typewritten words "This has been paid." Interstate Bond returned that copy to her, informing her that a check with the County revealed that the taxes were not paid. Thus, petitioner twice received notice that she should redeem her property. She did not seek advice from an attorney until after she received a letter from Mr. Allen Blair that a tax deed had been issued on Lot 28 and she never at any time asked for help from friends because she hated to bother friends with problems. These facts reveal that petitioner was aware of her problem but failed to seek advice because she did not want to "impose" on her friends. We further note that the trial judge expressly rejected the psychiatrist's testimony that Mrs. Diller was mentally ill or psychotic at the time of her husband's death and that he was admitting it only for the limited purpose of showing that petitioner was disturbed at that time. This case is one where there apparently was indifference or a wilful failure to act.

Although a court of review is reluctant to set aside a trial judge's finding of fact, a judgment will be reversed on appeal if it is manifestly against the weight of the evidence. (*Malkov Lumber Co. v. Wolf* (1971), 3 Ill. App. 3d 52, 278 N.E.2d 481; *In the Estate of Koss* (1967), 84 Ill. App. 2d 59, 228 N.E.2d 510; *Candalaus Chicago, Inc. v. Evans Mill Supply Co.* (1977), 51 Ill. App. 3d 38, 366 N.E.2d 319.) The manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of the evidence." (*Gettemy v. Grgula* (1975), 25 Ill. App. 3d 625, 628, 323 N.E.2d 628, 630. See also *Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 359 N.E.2d 1078.) In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. (*Valasquez v. Yellow Cab Co.* (1975), 32 Ill. App. 3d 934, 337

N.E.2d 365.) In the instant case, we agree with respondent's contention that the trial court's finding that petitioner was without fault or negligence is against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded with directions to enter judgment in favor of respondent.

Reversed and remanded with directions.

LORENZ and MEJDA, JJ., concur.