THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTON JAMES, Defendant-Appellant.

Fourth District    No. 16126

Opinion filed October 14, 1980.

158

Henry J. Plawer, of R. P. O'Connell, Ltd., of Quincy, for appellant.

Charles H. Burch, State's Attorney, of Hardin (Gary J. Anderson and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal presents a question not heretofore passed upon by the reviewing courts of this State, namely, the meaning of the words, "without any lawful excuse," as used in section 1 of the Non-Support of Spouse and Children Act (Ill. Rev. Stat. 1979, ch. 40, par. 1101).

The defendant and his former wife were married in 1948. Five children were born as issue of the marriage. The parents were divorced by decree of the circuit court of Calhoun County on December 10, 1976. Under that decree the defendant was ordered to pay $50 per week as child support. At trial, his former wife testified that she had received no payments since the divorce. On June 1, 1979, she signed a criminal complaint charging defendant with nonsupport under section 1 of the Act cited above. Jury trial was held in the circuit court of Calhoun County, as a result of which defendant was found guilty by verdict, and was sentenced by the trial court to one year's probation.

Three issues are presented for our consideration by defendant: (1) whether inability to pay is a lawful excuse within the meaning of the statute, (2) whether such inability is an affirmative defense, thus entitling defendant to an instruction on the matter, and (3) whether defendant was proved guilty beyond a reasonable doubt.

The evidence at trial disclosed that defendant possesses bachelor's degrees in science and in fine arts, and taught in the schools of Calhoun County for four years, 1968 to 1972. At some time shortly after leaving the schools, he moved to California and there established a mission as a counselor and scientology minister. The mission had as its purpose aid to young people who had problems associated with drugs and who had been released from prison. Defendant maintained the mission until approximately three months prior to the trial, at which time he returned to St. Charles, Missouri, and there established an industrial drapery cleaning business.

The divorce was granted on the basis of defendant's desertion and the five children remained in his former wife's custody, except for a period of six months, when one child, a retarded boy, stayed with his father at the mission in California. The former wife supported herself and

the children by working as a librarian in Calhoun County under a Federal assistance program. That program was terminated shortly before the trial and she was receiving unemployment compensation, together with payments under the Aid to Dependent Children program, and the Supplemental Security Income program for the boy who is retarded. She testified that all of this was insufficient for the needs of the children and when she asked the defendant for support money, he became defensive and claimed she was harassing him. Further evidence disclosed that defendant had remarried, and that there was another child as the issue of this marriage.

Defendant offered evidence, albeit vague, concerning the mission and its operation. It was a small apartment complex in which defendant lived and rented out portions "to students and ministers from different parts of the country." At the rear was what he described as a "workshop," apparently a series of garages containing wood-working shops, in which clients of the mission were employed.

The mission's sources of income are not stated categorically but appear to be from rentals of space in the apartment complex and sale of products from the workshop. Defendant testified that he attempted to get the mission established as a business entity, but was unsuccessful. He further testified as to difficulties with "the income tax people."

Further testimony revealed that all income to the mission was used for mission expenses, which included defendant's food and lodging, automobile and gasoline, and utilities. Notwithstanding defendant's attempts to segregate the mission as an entity, he filed individual income tax returns (Internal Revenue Service Form 1040), and took as deductions all of his personal expenses mentioned above. The 1977 form 1040 showed an income of over $19,000 and a taxable income of $1,680. His 1978 form 1040 showed taxable income of $2,458.

From the foregoing we are led to the conclusion that the defendant and the mission were indistinguishable. He operated it as a personal fiefdom, and the record is barren of any suggestion that he, or the mission, were under the direction, discipline or supervision of any higher authority, ecclesiastical or otherwise.

In pertinent part, the statute provides as follows:

"Every person who shall, without any lawful excuse, * * * desert or neglect or refuse to provide for the support or maintenance of his or her child or children under the age of 18 years, in need of such support or maintenance, shall be deemed guilty of a Class A misdemeanor * * *." Ill. Rev. Stat. 1979, ch. 40, par. 1101.

Defendant first maintains that inability to pay is a lawful excuse. We agree that it may be under the proper state of facts, but defendant has failed to come within its scope in the instant case for two reasons: (1) the

evidence demonstrated an ability to pay at least the residue of his taxable income after payment of taxes, and (2) any inability must be the result of circumstances over which a defendant has no control.

The record does not disclose how much of the income of the mission was spent for defendant's personal expenses, but we need not be concerned with this, since it does disclose that there was a surplus in 1977 and 1978. Even though requested by his former wife to make payments, defendant refused. The language of the supreme court in *Shaffner v. Shaffner* (1904), 212 Ill. 492, 72 N.E. 447, reiterated in *Storm v. Storm* (1973), 9 Ill. App. 3d 1071, 293 N.E.2d 633, is apropos:

> "He who seeks to establish the fact that his failure to pay is the result of lack of funds must show with reasonable certainty the amount of money he has received. He must then show that that money has been disbursed in paying obligations and expenses which, under the law, he should pay before he makes any payment on the decree for alimony. It is proper that he first pay his bare living expenses; but whenever he has any money in his possession that belongs to him and which is not absolutely needed by him for the purpose of obtaining the mere necessaries of life, it is his duty to make a payment on this decree." 212 Ill. 492, 496, 72 N.E. 447.

*Shaffner* and *Storm* were civil cases in which the burden rested on the respondent to establish an excuse. In the instant criminal case, "without any lawful excuse" is an element for the State to prove in its case in chief. This was done when on direct examination, the former wife testified that she had asked defendant for payments. He then offered no excuse, but according to her testimony became defensive and accused her of harassment. This established the State's case on this element. The burden then shifted to defendant, if he felt he had any lawful excuse, to produce it. Since by his own testimony he demonstrated that he had money left over after payment of his necessaries, he destroyed his own case. *Shaffner*.

■■ Even without the existence of the surplus, defendant's theory must fail, since we are of the opinion that "lawful excuse" as used in the statute means some condition which is not attributable to the actions of a defendant, such as unemployment not occasioned by his own act, poor health, sickness or inability to secure gainful employment.

We have not been referred to any decision specifically construing the language at issue here, but analogous provisions in other statutes have been considered by the Illinois courts.

In *Glover v. Glover* (1971), 132 Ill. App. 2d 284, 268 N.E.2d 218, the appellate court was called upon to construe the meaning of "without fault" as used in the separate maintenance statute (Ill. Rev. Stat. 1967, ch. 68, par. 22, now Ill. Rev. Stat. 1979, ch. 40, par. 402). The court said:

"The 'fault' referred to in the statute regarding separate maintenance does not require that the complaining party in a separate action be wholly blameless. To be a bar, such conduct must consist either of a consent to a mutual separation or such a failure of duty or misconduct as materially contributes to the disruption of the marital relation. [Citations.]" 132 Ill. App. 2d 284, 289, 268 N.E.2d 218.

In *Garcia v. Rosewell* (1976), 43 Ill. App. 3d 512, 357 N.E.2d 559, the appellate court was considering the meaning of the phrase "without fault or negligence" as used in section 247a(4) of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 728a(4)). The court said:

"Therefore, we hold the meaning of 'without fault or negligence' should be interpreted similar to the words 'without fault' in the case of *Glover v. Glover* where the court held that a party need not be totally blameless, but the person claiming the asserted right must not have purposefully failed in a duty or engaged in conduct that materially contributed to the problem complained of." 43 Ill. App. 3d 512, 517, 357 N.E.2d 559.

■■ In keeping with these authorities we hold that in order for a defendant to have a lawful excuse under section 1 of the Non-Support of Spouse and Children Act (Ill. Rev. Stat. 1979, ch. 40, par. 1101) the conditions giving rise to his failure to provide support must not have been of his own making nor can he pursue a course of conduct which materially contributes to the frustration of the statute.

As applied to the instant case, defendant is without any lawful excuse. The record demonstrates his ability to generate $19,000 in cash flow but he knowingly, and voluntarily, diverted it to his own purposes. However laudable may be his aspirations to assist and elevate unfortunates, they are not any lawful excuses for permitting his children to become public charges.

Defendant's second issue concerns the nature of the provision "without any lawful excuse." He maintains that it is an affirmative defense and therefore he was entitled to an instruction on the subject, together with making it part of the issues instruction. We disagree.

Affirmative defenses are detailed in articles 6 and 7 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, pars. 6—4 and 7—14). "Lawful excuse" is nowhere mentioned in these articles as an affirmative defense nor is there any other language in them from which the same might be inferred. The same is true of the Non-Support of Spouse and Children Act.

■■ It therefore follows that "without any lawful excuse" is an element of the offense, just as "without authority" is an element of burglary (Ill. Rev. Stat. 1979, ch. 38, par. 19—1), and the same language is an element of

home invasion (Ill. Rev. Stat. 1979, ch. 38, par. 12—11). (*People v. Pettus* (1980), 84 Ill. App. 3d 390, 405 N.E.2d 489.) Had the legislature intended an affirmative defense, it would have so specified as in the case of child abduction (Ill. Rev. Stat. 1979, ch. 38, par. 10—5(c)).

■■ Defendant's final contention is that he was not proved guilty beyond a reasonable doubt. We disagree. Without reiterating all of the record as previously recited, the State established the required elements: (1) refusal to support, (2) need of the children under 18, and (3) without any lawful excuse. The first two were essentially uncontroverted. The former wife testified as to the refusal and defendant's defensive attitude and claim of harassment. The qualification for, and receipt of, public aid is sufficient to demonstrate need. We have already expounded at some length on the matter of lawful excuse. Defendant was proved guilty beyond a reasonable doubt.

The verdict of the jury and the judgment and sentence of the circuit court of Calhoun County are affirmed.

Affirmed.

TRAPP and CRAVEN, JJ., concur.