FIRST DIVISION

March 23, 1998

No. 1-96-3709

In re )

APPLICATION OF THE COUNTY )

COLLECTOR FOR JUDGMENT AND SALE )

AGAINST LANDS AND LOTS UPON )

WHICH THE GENERAL TAXES ARE )

DELINQUENT PURSUANT TO SECTION )

235(a) OF THE REVENUE ACT OF )

1939, AS AMENDED. )

----------------------------- )

(David Watson, ) Appeal from the

 ) Circuit Court

Petitioner-Appellant, ) of Cook County.

 )

v. )

 )

Edward J. Rosewell, Cook County )

Treasurer, as Trustee of the )

Indemnity Fund, ) Honorable

 ) RAYMOND JAGIELSKI,

Respondent-Appellee). ) Judge Presiding.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This is an appeal brought by petitioner David Watson (Watson) from a trial court order denying his petition for relief under the indemnity provisions of the Revenue Act of 1939, as Amended.  35 ILCS 200/21-305 (West 1994).  Watson lost his property to a tax deed after his redemption payment was expunged by the trial court in a collateral tax deed proceeding, as being less than the full amount needed for redemption.  Watson sought indemnification.  The trial court found that Watson was not entitled to compensation and also denied Watson's motion for rehearing and reconsideration.  Watson appeals and raises the following issue:  whether the trial court's opinions, rulings and judgment denying relief under the indemnity provision (35 ILCS 200/21-305 (West 1994)) were erroneous and against the manifest weight of the evidence.

Watson testified at the indemnity hearing that he is 69 years old and employed as a roofer.  He completed two years of high school.  Watson testified that he owns approximately 21 investment properties.  Some of the properties are vacant lots and some are unoccupied.  In 1978, Watson purchased a two-flat at 1533 South Karlov in Chicago for approximately $7,000 as investment property.  Subsequently, Watson invested approximately $40,000 in improvements and labor including a new roof, new floors, tuck-pointing, and glass-block windows.  Watson rented out the building.  He was responsible for making repairs, paying utility bills and paying the real estate taxes.  

Watson testified that he did not always pay the real estate taxes on time.  He stated that if the real estate taxes were overdue, he would receive a letter from the Cook County Collector's Office informing him that the building had been sold for delinquent taxes.  The letter would also provide a deadline by which Watson could pay the taxes.  He stated that after receiving the letter, he would go to the fourth floor of the County Building and request an estimate of redemption.  Within a week or two weeks Watson would receive an estimate in the mail.  He stated that he is familiar with the redemption process but that he is not an expert.  Watson also testified that he does not understand how redemption estimates are calculated.

Regarding the property at issue, Watson testified that he received notification that the property had been sold and was given a deadline date of June 29, 1994, by which to redeem the property.  Watson went to the Cook County clerk's office and requested an estimate of redemption.  Watson testified that the estimate of redemption was approximately $3,600 to $3,900.  The estimate contained Watson's name and home address of 1542 South Karlov, which is different from the subject property's address.  Watson testified that on April 5, 1994, he went to the bank and withdrew $4,000 and then went to the Cook County clerk's office.  Watson stated that he waited in line for awhile and then a gentleman asked Watson if he could help him.  Watson assumed that this man was an employee; however, he didn't know for sure.  In response to the man's offer of help, Watson commented that the taxes "look like an awful lot, doesn't it?"  The man asked Watson what the size of the house was and Watson told him that it was a two-flat.  The man took the estimate sheet from Watson and told Watson to wait.  The man went into the back for about 10 to 15 minutes.  When he returned with the estimate sheet there was whiteout over the original estimate and $1,600, a substantially lower amount, was written in.  The man gave Watson a temporary receipt and later Watson received a certificate of deposit for redemption in the mail certifying the payment.  Watson testified that the man at the Cook County clerk's office did not explain the reason for the changes and Watson did not ask for an explanation.  Watson stated that he never told the man that he lived in the building or that it was a single-family home.  Watson had no doubt at the time that he had made a valid redemption.  Watson stated that he assumed the man at the Cook County clerk's office knew what he was doing.

The tax buyers, Command Properties, Inc., filed a motion to expunge redemption, alleging that the redemption made by Watson was "unlawful" because the property did not consist of a single- family residential building and, therefore, the redemption was insufficient.

Watson was given notice of the motion to expunge redemption but felt he did not have grounds to "beat" that motion.  The County clerk, by his attorney, the State's Attorney of Cook County, filed a response to the motion, seeking to dismiss the taxbuyer's motion to expunge redemption.  The motion to expunge redemption was granted and a tax deed issued conveying the property to the tax buyer, who recorded the deed.

Approximately eight months later, Watson instituted an indemnity action by filing and serving a verified petition against Edward J. Rosewell, as trustee of the indemnity fund (Trustee).  The petition asserted that Watson lost his property to a tax deed through no fault or negligence of his own but rather, through the error committed by the Cook County clerk in computing the cost of redemption less than the correct amount as if Watson resided at the property.  The assistant State's Attorney filed an unverified answer to the petition asserting that the Trustee did not have sufficient facts to admit or deny the allegations.

The only testimony at the indemnity hearing, other than Watson's, came from Howard Richter, a licensed appraiser.  Richter testified that on December 12, 1994, the fair market value of the property was $62,000.  At the conclusion of the indemnity hearing, the trial court took the matter under advisement.  The trial court ordered and read a transcript of the hearing prior to issuing its decision.  The trial court held that Watson failed to meet the standard of being without fault or negligence and stated, "I do not feel that someone who brings in a tax bill for one of his many investment properties and has that bill changed after he is asked a question what size house do you live in -- not what size house the building is or the tax bill is concerned -- meets that standard that has been annunciated in the statute."  The trial court stated that the indemnity fund was created for no other purpose but to compensate persons who, through no fault, find themselves facing the prospects of being out in the street.  Watson filed a motion for rehearing and/or reconsideration which was denied by the trial court.  This appeal followed.

The crux of Watson's argument is that he was without fault or negligence in the loss of his property to a tax deed and, therefore, under the provisions of section 21-305 of the Property Tax Code, he is entitled to a judgment against the indemnity fund in the amount of the fair market value of the property.  35 ILCS 200/21-305 (West 1994).

Section 21-305 of the Property Tax Code provides:

"(a) Any owner of property sold under any provision of this Code, who without fault or negligence of his or her own sustains loss or damage by reason of the issuance of a tax deed *** and who is barred or in any way precluded from bringing an action for the recovery of the property or any owner of property containing 4 or less dwelling units who resided thereon the last day of the period of redemption who, in the opinion of the Court which issued the tax deed order, is equitably entitled to just compensation, has the right to indemnity for the loss or damage sustained.  Indemnity shall be limited to the fair cash value of the property as of the date that the tax deed was issued, less any mortgages or liens thereon."  35 ILCS 200/21-305 (West 1994).

In support of his argument, Watson directs this court's attention to our decision in 
Garcia v. Rosewell
, 43 Ill. App. 3d 512 (1976), in which we defined the terms "without fault or negligence" as said terms are applied in the Indemnity Act.  In 
Garcia
, we initially noted that the legislature enacted the statute "at a time when there was a public outcry as the result of tax buyers taking advantage of unsophisticated property owners who had fallen behind on their taxes and then had fallen prey to the complexities of the tax buying procedures despite their willingness and ability to redeem their property."  
Garcia
, 43 Ill. App. 3d at 515.  The court reviewed the various meanings of the words "fault" and "negligence" and concluded that the legislature did not intend that they be given technical meanings.  
Garcia
, 43 Ill. App. 3d at 517.  The court stated that "[t]o do so would be to render the statute meaningless, because only those who have run afoul of the provisions of the Revenue Act have reason to invoke this particular statute.  The statute was apparently enacted to provide a remedy for the harsh results caused by the legislative policy which favors the collection of taxes and the merchantability of tax deeds.  We think the purpose is to do equity."  
Garcia
, 43 Ill. App. 3d at 517.  The court went on to hold that "the meaning of 'without fault or negligence' should be interpreted similar to the words 'without fault' in the case of 
Glover v. Glover
 where the court held that a party need not be totally blameless, but the person claiming the asserted right must not have purposefully failed in a duty or engaged in conduct that materially contributed to the problem complained of."  
Garcia
, 43 Ill. App. 3d at 517.  The court emphasized that each case must be decided on its facts.  
Garcia
, 43 Ill. App. 3d at 517. 

Watson contends that he did not "materially contribute to the problem" that caused him to lose his property.  He asserts that he did not say or do anything or make any misrepresentations to the county clerk that would justify the clerk's preparation of an erroneous estimate.  He further asserts that he had no reason to presume that the amended estimate was improperly calculated.   Watson contends that he "fell prey to the complexities of tax buying procedures despite his willingness and ability to redeem his property."  We disagree.

As the State contends, the trial court noted numerous times that it could not find Watson's testimony credible.  A court that finds an indemnity petitioner's testimony to be incredible is not obligated to award indemnity to that petitioner.  The State asserts that Watson's failure to contest the motion to expunge the redemption and the issuance of a tax deed contradicts his testimony that he believed himself to be a blameless victim and is evidence of his lack of credibility.  The State also points out that even after the State's Attorney filed a memorandum outlining cases stating that faultless redemptors should not unfairly be deprived of their property, Watson still did not contest the issuance of the tax deed.  For example, Illinois courts have held that the right of a property owner to redeem is superior to the right of a purchaser to get a tax deed (
In re Application of Rosewell
, 148 Ill. App. 3d 297, 303 (1986)) and that when an incorrect payment is made and accepted by the correct county official, a valid redemption may be found by the circuit court.  
In re Application of the County Collector
, 220 Ill. App. 3d 933 (1991).  Additionally, the circuit court can exercise its equitable powers to allow a redemption after the redemption period has expired where a mistake by the appropriate public official has occurred.  
Mutual Life Insurance Co. v. Chambers
, 88 Ill. App. 3d 952 (1980).  The State asserts that in light of the foregoing cases, Watson's failure to protect his redemption iss so unexplainable that it affects his credibility.  The State cites 
Kirk v. Rosewell
, 225 Ill. App. 3d 326, 329 (1992), in which the court stated that a trial court has broad discretion in determining whether an owner is entitled to compensation, and its conclusions should not be disturbed on review absent abuse of that discretion.  We agree with the State and find that the trial court did not abuse its discretion in denying Watson's petition for indemnification.

The State also contends that Watson should not be indemnified since he failed to exhaust legal remedies to recover his property before petitioning for redemption.  The State cites 
In re Application of Rosewell
, 148 Ill. App. 3d 297 (1986), and 
In re Application of the County Treasurer & ex officio County Collector
, 
171 Ill. App. 3d 644 (1987), in support of this argument.  In 
Application of Rosewell
, the county clerk made a mistake as to the redemption deadline.  The court noted:

"It has long been settled that Illinois law favors redemption and unless  injury results to the purchaser at the sale, a liberal construction will be given to redemption laws.  [Citation.]  ***  Moreover, the right of a purchaser to get a deed is subservient to the right of the owner or interested party in the property to redeem.  [Citation.]  Our United States Supreme Court has stated that the right to redeem is a substantial right, and when the exercise of that right is prevented as a result of official mistake, a court of equity has a duty to intervene.  [Citation.]  

Illinois courts also consider the right of redemption to be a  substantial right.  It is important that anyone possessing the right of redemption should not lose that right by mistake or  misinterpretation.  [Citation.]"  
Application of Rosewell
, 148 Ill. App. 3d at 303-04.  

The court applied the above principles of law and held that "a court may properly exercise its equitable powers and allow redemption even after the statutory period has expired in cases where redemption may have been precluded due to fraud or mistake on the part of the purchaser or public official."  
Application of Rosewell
, 148 Ill. App. 3d at 304.  

In 
In re Application of the County Treasurer & ex officio County Collector
, 
171 Ill. App. 3d 644 (1987), the taxpayer obtained an estimate of redemption from the clerk's office which was erroneous and paid that amount.  The taxpayer did not attend the hearing at which the court issued the tax deeds.  
Application of the County Treasurer
, 171 Ill. App. 3d at 648.  The court applied equitable principles and vacated the tax deed, finding that the owner effectively redeemed the property by paying the erroneous redemption amount prior to expiration of the redemption date.  
Application of the County Treasurer
, 171 Ill. App. 3d at 650.

The State asserts, and we agree, that based on the above cited cases, Watson could have successfully challenged the tax deed on similar grounds.  Thus, Watson was not "barred or in any way precluded from bringing an action for the recovery of the property" as is required by the indemnity provision.  The failure of Watson to exhaust legal remedies also goes to his credibility and whether he believed himself to be a blameless victim.

Watson also raises two procedural issues related to the State's Attorney's act of filing an unverified answer on behalf of the Trustee in response to Watson's verified petition.  The unverified answer recited that the Trustee had insufficient facts with which to admit or deny the allegations, except to admit that the Cook County clerk had contested the motion of Command Properties, Inc., and that the court had entered an order directing the issuance of a tax deed for the subject property.  First, Watson asserts that under section 605(a) of the Code of Civil Procedure (735 ILCS 5/2-605(a) (West 1996)), when a pleading is verified every subsequent pleading must also be verified unless verification is excused and that filing an unverified answer has the same effect as if no answer had been filed at all.  Watson cites 
Florsheim v. Travelers Indemnity Co.
, 75 Ill. App. 3d 298, 308-09 (1979), and argues that when no answer is filed, all well-pleaded facts are deemed admitted.  The State responds that Watson's failure to file a motion objecting to the insufficiency of the unverified answer results in waiver of that objection.  The State cites 
Padgett v. A&M Insulation Co
., 266 Ill. App. 3d 320, 323 (1994), and argues that the purpose of requiring that defects in pleadings be attacked by motion is to allow the parties to cure them before trial.  We agree with the State and find that this issue is waived.

Second, Watson argues that the combination of the assistant State's Attorney's Rule 137 certification (134 Ill. 2d R. 137) arising from subscribing his name to the Trustee's answer and his failure to introduce evidence of any kind at the indemnity hearing and the subsequent motion for rehearing that would settle the issue as to whether Watson in any way contributed to the county clerk's preparation and acceptance of the amended estimate, created a presumption, that the evidence, if produced, would have been adverse to the Trustee and the county clerk.  Watson cites 
Wilkey v. Illinois Racing Board
, 65 Ill. App. 3d 534 (1978), in which this court stated that "[u]nder Illinois law, the failure of a party to introduce evidence which would conclusively settle a doubtful issue gives rise to a presumption that that evidence, if produced, would be adverse to that party."  
Wilkey
, 65 Ill. App. 3d at 539-40.  We find Watson's argument tenuous.  Watson, as the party bringing the indemnity action, has the burden of proving that he was "without fault or negligence."  It was the Trustee's decision to not call Cook County clerks to testify.  Moreover, the county clerk's office is not a party in the indemnity action and the Trustee is under no obligation to name the County Clerk as a third-party defendant.  See 
People ex rel. Partee v. Murphy
, 133 Ill. 2d 402 (1990).  Thus, we find that no adverse presumption applies.

The trial court found Watson's testimony to be incredible and there is evidence in the record to support the trial court's finding.  Accordingly, we find that the trial court did not abuse its discretion in denying indemnification.  

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'BRIEN and O'MARA FROSSARD, JJ., concur.