DOROTHY VAN DAHM, Petitioner-Appellant, v. JOHN LOTUS NOVAK, County Treasurer of Du Page County, Respondent-Appellee and Third-Party Plaintiff (Harold Van Dahm, Third-Party Defendant; P. L. Myers, Third-Party Defendant-Appellee).

Second District    No. 2—87—1140

Opinion filed September 27, 1988.

Burke, Griffin, Chomicz & Wienke, P.C., of Chicago (Douglass G. Hewitt, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner and Robert G. Rybica, Assistant State's Attorneys, of counsel), for appellee John Lotus Novak.

Darline L. Petersen and Edwin T. Simpson, both of Wheaton, for appellee P. L. Myers.

JUSTICE DUNN delivered the opinion of the court:

Petitioner, Dorothy Van Dahm, filed a petition against John Lotus Novak, the Du Page County Treasurer, pursuant to section 247a of the Revenue Act of 1939 (Revenue Act) (Ill. Rev. Stat. 1983, ch. 120, par. 728a), seeking indemnity for losses she sustained by reason of the issuance of a tax deed relating to property petitioner had owned in joint tenancy with her then husband, Harold Van Dahm. The treasurer filed third-party complaints against Harold and against the tax purchaser, P. L. Myers. A default judgment was entered against Harold, but the circuit court of Du Page County granted summary judgment motions filed by the treasurer and Myers. Petitioner appeals, contending that whether she is entitled to relief under section 247 of the Revenue Act requires resolution of genuine issues of material fact so that entry of summary judgment was improper. We agree.

The parties stipulated to the following facts: Petitioner resides at

2217 Hainsworth Street, North Riverside, Illinois (the North Riverside residence). She has resided at that address for approximately 28 years. Although petitioner attended three years of high school, she is not a high school graduate. She did not attend college, and she has received no formal education beyond three years of high school. Petitioner has not attended classes or seminars relating to real estate, accounting, taxes and/or business law. For approximately 10 years, petitioner performed clerical duties for Central Scavenger Services, an enterprise operated by Harold, on a part-time basis.

The property in question here is an unimproved lot located in Oak Brook, Illinois (the premises), in which petitioner and Harold acquired a fee simple interest, in joint tenancy, during 1968. The premises was the only property they owned in Du Page County. Prior to December 5, 1979, neither petitioner nor Harold paid the first installment of the 1978 real estate taxes on the premises.

On December 5, 1979, the premises was sold for delinquent taxes pursuant to the Revenue Act. (Ill. Rev. Stat. 1979, ch. 120, par. 719 et seq.). Third-party defendant, P. L. Myers, purchased the premises for $593 and was issued a certificate of. sale. As of December 5, 1979, petitioner did not know that the 1978 taxes for the premises had not been paid or that the premises had been sold for delinquent taxes.

On April 1, 1980, a notice of sale of the premises was mailed to Harold and was received by him on April 7, 1980. Harold neither told petitioner that he received the notice of sale nor informed her that the premises had been sold for delinquent taxes.

On March 12, 1982, Myers filed a petition for deed relating to the premises. Subsequent to filing the petition for deed, Myers caused copies of notices to owners and occupants to be delivered to the Du Page County sheriff and the circuit court clerk, which were to be mailed to Harold and petitioner, in separate envelopes, at the North Riverside residence. Each office prepared an envelope with an attached return receipt bearing the typed notation "Dorothy M. Van Dahm" and another envelope with an attached return receipt bearing the typed notation "Harold Van Dahm." The notices were intended to advise petitioner that the premises had been sold for delinquent taxes, that the redemption period would expire July 5, 1982, and that the tax case was set for hearing on July 12, 1982. The aforesaid notice contains an entry "Property located at _____." That entry was left blank on each notice.

Petitioner did not receive the notices and did not sign the return receipts relating to the above notices. Her signature on the return

receipts was signed by Harold without petitioner's knowledge or consent. Petitioner never expressly authorized Harold to sign her name on the return receipts.

Prior to June 29, 1983, Harold never informed petitioner that he received the aforesaid notice or that he signed her name to the return receipts. Prior to June 29, 1983, petitioner had no knowledge of the notice to owners and occupants and/or the pendency of the tax case. Prior to June 29, 1983, petitioner never personally received a copy of the aforesaid notice to owners and occupants.

On July 12, 1982, a tax deed was issued conveying the premises to Myers. The tax deed was not procured by fraud on the part of Myers or the County of Du Page. The fair cash value of the property was $92,000 at that time, and an undivided one-half interest was worth $46,000. On March 24, 1983, Myers transferred title to the premises, which at that time was an improved vacant lot, for consideration of $92,000.

Petitioner first learned that the first installment of the 1978 taxes had not been paid and the premises sold for delinquent taxes on or about June 29, 1983. Harold did not inform her of these facts before then, and she did not see notices published in the Oak Brook Press. At all relevant times, she possessed sufficient funds to pay the taxes and/or the amount required to redeem the property.

During the period of 1968 through 1977, real estate taxes on the premises were paid on a timely basis in the form of checks signed by Harold. Taxes on the premises for the second installment of 1978 taxes and the years 1979, 1980, and 1981 were paid, on a timely basis, in the form of checks signed by Harold. The first installment of 1982 taxes was paid both by Harold and the then owner. Subsequent to December 5, 1979, Harold continued to pay assessments relating to the premises levied by the York Woods Community Association. From 1959 through 1983, Harold made all real estate tax payments on the North Riverside residence. During 1979 and 1980, most household bills were paid, on a timely basis, in the form of checks written by Harold.

The parties also stipulated that at various times during their marriage, Harold hid marital bills from petitioner. In 1979, both Harold and petitioner opened and examined some household bills, and in 1980, Harold stopped mail delivery to the house for a three-month period without petitioner's knowledge. From 1975 to 1982, Harold alone arranged for preparation of Federal tax returns. In November 1980, the Internal Revenue Service filed a levy on the North Riverside residence and threatened the sale of that property as a result of

Harold's failure to pay taxes due in connection with the operations of Central Scavenger Services. In November 1980, petitioner learned of the IRS levy and contacted Charles Zielstra, her brother. Through petitioner's brother, sufficient funds were obtained to release the IRS levy.

In the spring of 1981, petitioner looked for the 1980 tax bill for the premises in the mail. When the bill did not arrive, petitioner contacted her brother and inquired as to whether he had received his 1980 Du Page County tax bill. Mr. Zielstra said that he had received his bill. Thereafter, Mr. Zielstra asked Harold whether he had received the 1980 tax bill for the premises. Subsequently, Harold produced an envelope, purportedly containing the tax bill. The postmark borne on the envelope was smudged, and Harold stated that he found it in the bushes at the North Riverside residence.

On or about February 22, 1984, by deed dated February 22, 1984, Harold conveyed his interest in the North Riverside residence to petitioner. The deed bore revenue stamps totaling $45, indicating a consideration for the transfer of $45,000. Contemporaneous with the execution of deed, the parties executed a certain memorandum of understanding. The memorandum of understanding reflects the parties' agreement that, in consideration for services rendered by petitioner to the business enterprise owned by Harold, Harold agreed to convey his interest in the North Riverside residence to petitioner. The memorandum further recites that the conveyance would not render Harold insolvent. During the year preceding the conveyance, the Van Dahms experienced substantial marital problems. In 1983, Harold moved into the basement of the North Riverside residence. In October 1984, Harold left the marital residence. On November 14, 1986, petitioner filed a petition for dissolution of the marriage of Dorothy M. Van Dahm and Harold Van Dahm in the circuit court of Cook County, Illinois.

■ It is well settled that summary judgment should be granted only when the pleadings, depositions and affidavits on file clearly show no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) In deciding if a genuine issue of material fact exists, the pleadings, depositions, admissions, exhibits and affidavits on file must be construed strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Under this standard, for the reasons discussed below, we find that the trial court erred in granting summary judgment for the treasurer and Myers.

Section 247a of the Revenue Act provides:

> "Any owner of real estate sold pursuant to any provision of this Act at a sale held subsequent to September 1, 1970, who without fault or negligence of his own sustains loss or damage by reason of the issuance of a tax deed \*\*\*, and who is barred or in any way precluded from bringing an action for the recovery of such real estate \*\*\* has the right to indemnity for the loss or damage sustained." (Ill. Rev. Stat. 1983, ch. 120, par. 728a(4).)

The parties here stipulated that petitioner was an owner of real estate sold pursuant to the Revenue Act and that she sustained a loss by reason of the issuance of the tax deed to Myers. Thus, the only disputed issues are whether petitioner was without fault or negligence, as those terms are construed under the Act, and whether, when she filed her petition for indemnity, she was barred or precluded from bringing an action for recovery of the real estate.

■ The parties are in apparent agreement that the term "without fault or negligence" as used in the statute should be construed as it was in *Garcia v. Rosewell* (1976), 43 Ill. App. 3d 512, where the court stated:

> "[T]he meaning of 'without fault or negligence' should be interpreted similar to the words 'without fault' in the case of *Glover v. Glover* [(1971), 132 Ill. App. 2d 284,] where the court held that a party need not be totally blameless, but the person claiming the asserted right must not have purposefully failed in a duty or engaged in conduct that materially contributed to the problem complained of. We emphasize that each case must be decided on its own facts." (*Garcia*, 43 Ill. App. 3d at 517.)

The *Garcia* court's determination of the intent and purpose of the statute was approved by this court in *In re Application of Kane County Collector* (1985), 135 Ill. App. 3d 796 (cited by the parties and hereafter as *Tharp v. Critton*).

In arguing that she was without fault or negligence, petitioner points out that the parties stipulated that she did not know that the 1978 taxes had not been paid or that the premises had been sold for delinquent taxes. She also notes that she did not know the tax deed had been issued until almost a year later and that she did not receive either the notice of sale or the notice to owners and occupants. It was also stipulated that Harold signed petitioner's name to the return receipts attached to the notices without petitioner's knowledge or consent and that Harold concealed from her the delinquency, the sale, and her right to redeem. She also contends that the notice to

owners and occupants did not identify the premises as required by sections 263 and 266 of the Revenue Act (Ill. Rev. Stat. 1983, ch. 120, pars. 744, 747). Petitioner concludes that such facts demonstrate that she did not "purposefully [fail] in a duty" (*Garcia*, 43 Ill. App. 3d at 517), but that she was the unwitting victim of Harold's deceit and Myers' improper notice.

Petitioner likens her situation to that found in *Garcia*. In that case, Mrs. Garcia did not pay real estate taxes for certain years and failed to redeem them despite receiving notice that a tax deed would be issued if she did not do so. Nevertheless, the *Garcia* court found that Mrs. Garcia's actions did not constitute fault or negligence under the statute, because she had been deceived by another tax purchaser into thinking that the property was no longer hers and that she would have to buy it back from him. (*Garcia*, 43 Ill. App. 3d at 517.) Petitioner here argues that she, too, was the victim of fraud, in this case, Harold's. Furthermore, she contends that her failure to redeem the property is even less blameworthy than Mrs. Garcia's, because Mrs. Garcia at least knew the taxes had not been paid.

The treasurer responds that this case is closer factually to *Tharp* than *Garcia*. In *Tharp*, however, the petitioner clearly had notice that the taxes were not paid, yet she did nothing to help herself. (*Tharp*, 135 Ill. App. 3d at 808.) In this case, petitioner's loss of title was not due to her own indifference and wilful failure to act. *Tharp* is clearly distinguishable from the case at bar.

Both the treasurer and Myers go on to argue that, because the real estate was held in joint tenancy, petitioner had a duty to see that the taxes were paid and that her negligent failure to do so was the cause of her loss. In support of this argument, they cite several cases which state that joint tenants are equally responsible for real estate taxes. (*Carlyle v. Jaskiewicz* (1984), 124 Ill. App. 3d 487; *Gilmore v. Gilmore* (1975), 28 Ill. App. 3d 36.) Those cases do not hold, however, that it is negligence as a matter of law for one joint tenant to rely on another to make tax payments. To the contrary, it would be unrealistic to believe that both joint tenant/spouses in any given marriage share responsibility for payment of bills and taxes. Realistically, it is much more common that one spouse takes responsibility for making such payments without the other looking over his or her shoulder to make sure that the responsibility is fulfilled. In light of such common marital arrangements, we believe whether such reliance constitutes negligence is a question of fact.

Possibly anticipating this holding, the treasurer and Myers go on to argue that, based on Harold's actions, petitioner should have been

aware that the first installment of the 1978 taxes had not been paid. The problem with this argument is that it relies solely on facts, and there are other facts which indicate that petitioner's reliance was not so unreasonable as to constitute a wilful disregard of duty. Presented with these conflicting facts, summary judgment was improper.

The treasurer also contends that, because petitioner and Harold held the real estate in question for investment purposes, they were a partnership. He further argues that, because Harold received notice of the tax sale, the partnership, including petitioner, had such notice pursuant to section 12 of the Uniform Partnership Act (Ill. Rev. Stat. 1983, ch. 106½, par. 12). As petitioner notes, however, notice is not imputed to the partnership "in the case of a fraud on the partnership committed by or with the consent of that partner." (Ill. Rev. Stat. 1983, ch. 106½, par. 12.) Due to Harold's deceit in this matter, the notice to him cannot be imputed to petitioner.

Finally, we note that all parties discuss to some extent the form of the notice sent by Myers. Petitioner argues that the notice was defective for failing to comply with statutory requirements, while Myers and the treasurer argue that the notice was in proper form because it bore the permanent index number of the premises. We find, however, that these arguments have no bearing on whether petitioner was at fault or negligent, because it was stipulated that she never received the notices. The form of the notice thus had nothing to do with plaintiff's loss of the property. In any event, section 1(19) of the Revenue Act provides that "the index number assigned to the particular real estate *** shall constitute a sufficient description of the real estate to which it has been assigned, wherever a description of real estate is required under any Section of this Act." (Ill. Rev. Stat. 1983, ch. 120, par. 482(19).) Therefore, the description contained in the notice was sufficient. *In re Application of County Collector* (1988), 167 Ill. App. 3d 521, 527.

■ The next issue is whether petitioner was barred from bringing an action for recovery of the premises. In addressing this issue, the parties are in agreement that, under section 266 of the Revenue Act, a tax deed may be challenged only by direct appeal or by a motion pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401). (Ill. Rev. Stat. 1983, ch. 120, par. 747; *Elliott v. Johnson* (1987), 156 Ill. App. 3d 70, 73.) After reviewing the arguments presented, we conclude that neither of those avenues was available to petitioner.

The tax deed was issued to Myers on July 12, 1982, and it was stipulated that petitioner did not learn of this fact until, at the earli-

est, June 29, 1983. When petitioner did become aware that the tax deed had been issued, both the 30-day period in which she could have filed a direct appeal and the additional period in which she could have sought an extension of time to file her appeal had expired. (See 107 Ill. 2d Rules 303(a), (e).) Neither the treasurer nor Myers disputes this point.

There is disagreement, however, over whether plaintiff could have filed a petition for relief from the judgment for tax deed under section 2—1401 of the Code of Civil Procedure. Both the treasurer and Myers argue that, because petitioner learned of the sale within two years, she could have filed a section 2—1401 petition. This argument overlooks the significance of the fact that Myers had conveyed the premises to a *bona fide* purchaser in March 1983, three months before petitioner first learned of the tax sale.

Section 2—1401(e) of the Code of Civil Procedure provides:

"Unless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order or judgment pursuant to the provisions of this Section does not affect the right, title or interest in or to any real or personal property of any person, not a party to the original action, acquired for value after the entry of the order or judgment but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order or judgment." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401(e).)

Thus, even if petitioner had filed a section 2—1401 petition, she could not have affected the *bona fide* purchaser's title to the premises. (*In re Application of Cook County Treasurer* (1985), 135 Ill. App. 3d 901, 907; *Ford City Bank & Trust Co. v. Ford City Bank & Trust Co.* (1982), 110 Ill. App. 3d 123, 128.) Petitioner was therefore effectively barred from recovering her property via a section 2—1401 petition.

Although the treasurer and Myers also argue that petitioner could have sought monetary damages by means of a section 2—1401 petition, the availability of such a remedy is irrelevant to whether petitioner is entitled to indemnity under section 247a of the Revenue Act. The statute denies indemnity to persons who are not barred "from bringing an action *for the recovery of such real estate.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 120, par. 728a(4).) It does not deny indemnity if other relief is available. If a third party would be liable to plaintiff for money damages, the treasurer would be subro-

gated to plaintiff's claim and could bring that party in as a third-party defendant. (Ill. Rev. Stat. 1983, ch. 120, par. 728a(5).) The treasurer did exactly that here and, in fact, obtained a default judgment against Harold.

Finally, both the treasurer and Myers argue that petitioner is not entitled to relief because petitioner's loss has been satisfied by Harold's transfer of his interest in the marital residence to petitioner. While the value of the interest Harold transferred is apparently close to that of petitioner's interest in the subject property, there is absolutely no evidence that the transfer was meant to satisfy petitioner's present claim. This speculative argument is clearly without merit.

In summary, we hold that a genuine issue of material fact exists as to whether petitioner was at fault in the loss of her property. Although joint tenants have a duty to pay real estate taxes, it is still a question of fact as to whether petitioner was negligent in relying on Harold to pay the taxes. Moreover, petitioner was barred from instituting an action to recover her property because, by the time she learned that a tax deed had been issued, it was too late to appeal and a *bona fide* purchaser's acquisition of title precluded recovery of the property via a section 2—1401 motion. There is no evidence that petitioner's loss has been satisfied, and since the statute makes no exception for joint tenants, petitioner will be entitled to indemnity if she proves at trial that the loss of her property was not due to her own fault or negligence.

The order of the circuit court of Du Page County granting summary judgment for the treasurer and Myers is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

INGLIS and NASH, JJ., concur.