*In re* APPLICATION OF COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF COOK COUNTY, for Judgment and Order of Sale Against Real Estate Rendered Delinquent for the Nonpayment of General Taxes, Scavenger Sale (G and R Investments, Petitioner for Tax Deed, v. Edward J. Rosewell, County Treasurer of Cook County, as Trustee, Respondent-Appellee (Rudolph Baez *et al.*, Petitioners-Appellants)).

First District (3rd Division)    No. 1—97—0019

Opinion filed January 20, 1999, *nunc pro tunc* November 25, 1998.—Rehearing denied January 6, 1999.

Alan L. Meserow, of Chicago, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Patricia M. Shymanski and Dean M. Victor, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Petitioners Rudolph and Pauline Baez (petitioners) appeal from an order of the circuit court granting a directed finding on petitioners' petition for indemnification, pursuant to the indemnification provision of the Illinois Property Tax Code (Code) (35 ILCS 200/21—305 (West 1996)), to respondent Edward J. Rosewell, county treasurer of Cook County and trustee of the indemnity fund (respondent). On appeal, petitioners contend that the trial court erred in its application of the without "fault or negligence" standard of the Code and in finding that petitioners were not without fault or negligence. For the reasons set forth below, we affirm.

Petitioners bought the subject property, commonly known as 1100 North Harding, Chicago, Illinois, in 1976 and remained in possession until 1991. Throughout the period of their ownership, petitioners claim they paid at least some of their property taxes, but they could not recall when, nor could they produce proof of any payments. According to the county records, petitioners never paid any property taxes for the years 1976 through 1985. The county's records reflect that the taxes for the years 1986 through 1991 were paid, not by petitioners, but by the tax deed petitioner in the underlying tax deed case.

The present appeal arose from the sale of petitioners' property for delinquent real estate taxes at the 1987 "Scavenger Act Sale for General Taxes for the years 1976—1985." At that sale, G&R Investments purchased the delinquent taxes and subsequently filed a petition for tax deed. On July 11, 1990, G&R sent several "take notices" to the sheriff of Cook County for service upon interested parties. A take notice is a notice to interested parties in the property informing them that the property has been sold because of delinquent taxes and that the period for redemption will expire on a certain date, and informing the parties of the next court date in reference to the property. The letter to the sheriff from G&R's attorney instructed him to *personally* serve both petitioners. The sheriff's return of service indicated that the sheriff attempted personal service four times between July 18, 1990, and July 25, 1990. Other than those attempts, no other attempts at personal service appear in the record. In addition to personal service, the record contains returns of certified mail addressed to petitioners postmarked on August 15, 1990, which were subsequently

returned to sender because petitioners never picked them up. Lastly, a notice appeared in the Chicago Daily Law Bulletin for three consecutive days on July 16, 17 and 18, 1990, advising petitioners of the sale. The period for redemption was extended until November 15, 1990, and that date passed without anyone redeeming the property.

G&R subsequently assigned its purchase to Dickens Central Properties, Inc., on April 16, 1991, and on that same date, the trial court granted Dickens', as substitute petitioner, motion to direct the county clerk to issue a tax deed in favor of Dickens. In that order, the trial court found that "all notices required by law have been given and *** DICKENS CENTRAL PROPERTIES, INC., has complied with all the provisions of the law," and it ordered the county clerk to issue a tax deed conveying the subject property to Dickens Central. On August 16, 1991, Dickens filed a petition for order of possession with the trial court alleging that it had attempted to gain possession of the property from petitioners but had been unable to do so despite several requests. On August 26, petitioner Pauline Baez filed a *pro se* motion, in her and Rudolph's behalf, to "Vacate Judgment," alleging petitioners "received the wrong number 90—CoTDS—815 which belongs [to] Donald Freedberg *** and we were not in court because no. 90—CoTDS—815 does not reflect [*sic*] to us, we were never notified of any tax sale on our building." On September 3, the trial court entered an order for possession in favor of Dickens Central. Petitioners, in April 1996, filed a petition for indemnity against the trustee of the indemnity fund, respondent Cook County Treasurer Edward Rosewell, seeking the fair market value of their home, alleging that they had "lost title to their real estate through no fault or negligence of their own" and were unable to recover title to the real estate; lacked another remedy that would equitably compensate them; would suffer an irreparable loss unless the court granted them recovery through the indemnity fund; and were therefore entitled to indemnity for the fair market value of the property.

At the trial on petitioners' petition for indemnity, the court initially bifurcated the trial into two parts to determine (1) whether petitioners were entitled to indemnity and, if so, (2) what amount constituted the fair market value of the property. Petitioner Rudolph testified that he and his wife had purchased the subject property, a six-unit apartment building, in 1976 and that, until he was dispossessed in 1991, he maintained the property and kept it in good repair. He further stated that he never received notice from the sheriff or in the mail that his property had been sold, that he had a right to redeem the property, or that if he failed to redeem, he would be divested of ownership. Rudolph also denied ever seeing any of the take notices that formed the

basis of the underlying tax deed case and stated that, if he had been notified of the sale and his right to redeem, he would have promptly taken steps to redeem the property. Rudolph further stated that he first learned of the sale of his property when he was presented with the petition for an order of possession in August 1991. According to Rudolph, the petition for an order of possession that he received had the case number "90—CoTDS—815" on it, instead of the proper case number of 90—CoTDS—813 for the underlying tax deed action.

Petitioner Pauline testified that she had paid property taxes on the subject property at times but could not provide proof because it had all burned in a fire at her residence on "Francisco." She stated that at no time during the time she lived at 1100 North Harding did the sheriff come to serve her with any papers, and she always went to the post office to pick up any registered mail that was delivered. Pauline further stated that she never received any notice regarding back taxes owed on the 1100 North Harding property, and the first time she learned of the tax sale was in August 1991 when she discovered the petition for an order of possession lying in her hallway. Thereafter, she took the petition downtown and attempted to find out exactly what was happening to the property. She subsequently filed a *pro se* motion to vacate the order, which was denied.

After Pauline testified, petitioners rested, reserving the right to recall witnesses during rebuttal. At this time, respondent moved for a directed finding, arguing that petitioners were aware of the need to pay taxes, materially contributed to the loss of the property, and their testimony was inconsistent and not credible. In response, petitioners conceded that some taxes were not paid but argued that the failure to pay taxes was not relevant in determining fault or negligence for indemnity purposes.

In granting respondent's motion for a directed finding, the trial court noted that the petitioners had a working knowledge of the tax collection process; the county records showed petitioners had paid no taxes for the entire period they owned the subject property; and the evidence demonstrated serious inconsistencies between petitioners' testimony and the record from the underlying tax deed case, which the court took judicial notice of at the request of petitioners. The trial court also described petitioners' conduct in failing to pay taxes as "charitably *** outrageous" and found that "the fact that the Baezs lost their property was clearly because of their own longstanding cavalier attitude towards the payment of taxes." This appeal followed.

■ As a general rule, a "court that finds an indemnity petitioner's testimony to be incredible is not obligated to award indemnity to that petitioner." *In re Application of the County Collector*, 295 Ill. App. 3d

711, 716, 692 N.E.2d 1290 (1998) (*Watson v. Rosewell*). Indemnification is limited to those owners of real estate who are "barred or in any way precluded from bringing an action for recovery of the property." 35 ILCS 200/21—305 (West 1996).

■ Petitioners in the present case argue that they never received personal service of the various take notices as required by the applicable statute. See 35 ILCS 200/22—15 (West 1996). Petitioners further argue that since they never knew about the tax sale until four months after the tax deed issued, there is no way they could have been at fault or negligent in losing their property. We need not address these arguments, however, because we find the application of section 2—1401 of the Code Of Civil Procedure (735 ILCS 5/2—1401 (West 1996)) dispositive of petitioners' indemnification claim. See *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 502, 520 N.E.2d 37 (1988) ("[A] reviewing court may sustain the decision of the trial court on any grounds called for by the record, regardless of whether the trial court made its decision on the proper ground").

■ Any question regarding the notice, or lack thereof, given petitioners in the underlying tax deed case is not before this court. In the underlying case, the trial court made specific findings that the statutory notice requirements were satisfied. After such a finding, it is presumed that satisfactory proof was presented. *Novak v. Smith*, 197 Ill. App. 3d 390, 397, 554 N.E.2d 652 (1990). That decision, because petitioners allegedly did not know of the tax deed action until well after the 30-day period for filing a notice of appeal, was never appealed. However, even with such a presumption, petitioners were not completely precluded from attacking the validity of the tax deed that the trial court issued. Under section 22—45 of the Property Tax Code (35 ILCS 200/22—45 (West 1996)), a tax deed is uncontestable except by direct appeal or under a petition filed pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1996)), which provides that an order may be vacated within two years of its entry provided that there is a meritorious defense and the party exercises due diligence in filing the petition and proceeding with the claim or defense.

■At oral argument before this court, petitioners, when questioned about their failure to file a section 2—1401 petition, argued they did not file a petition because, in their view, there must be a showing of fraud to succeed on such a petition. However, we find petitioners' "view" unfounded. In *Fiala v. Schulenberg*, 256 Ill. App. 3d 922, 628 N.E.2d 660 (1993), this court discussed the requirements to succeed on a section 2—1401 petition. As stated in *Fiala*:

"In order to be entitled to relief under section 2—1401 of the

Code of Civil Procedure [citation], the petitioner must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. ***

Due diligence requires that the section 2—1401 petitioner have a reasonable excuse for failing to act within the appropriate time; *** he is not entitled to relief unless he shows that, through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court." *Fiala*, 256 Ill. App. 3d at 929.

Clearly, no requirement exists in section 2—1401 that the petitioner be a victim of fraud. All that is required is that the petitioner demonstrate a meritorious defense and due diligence. See *Fiala*, 256 Ill. App. 3d at 929.

■ We next observe that the issue of an indemnity petitioner's failure to file a section 2—1401 petition was briefly discussed in *Van Dahm v. Novak*, 174 Ill. App. 3d 880, 529 N.E.2d 43 (1988). In *Van Dahm*, this court, in response to the respondent's argument concerning the petitioner's failure to file a section 2—1401 petition, held that since the original holder of the tax deed had transferred title for consideration to a third party, the petitioner "could not have affected the *bona fide* purchaser's title to the premises. [Citations.] Petitioner was therefore effectively barred from recovering her property via a section 2—1401 petition" (*Van Dahm*, 174 Ill. App. 3d at 888), and the petitioner was entitled to seek indemnification.

On the other hand, this court in *McClandon v. Rosewell*, 299 Ill. App. 3d 563 (1998), in responding to the petitioner's argument that she was not properly served with notice of a tax deed proceeding, held that "under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1994)), [the] plaintiff had two years from *** the date that she was divested of her property, to file a petition with the court. She did not take such an action and cannot now raise the issue of adequacy of notice." *McClandon*, 299 Ill. App. 3d at 568. From the facts of *McClandon*, no *bona fide* purchaser was involved, but, as in the present case, there was a substitute tax deed petitioner who was assigned the certificate of purchase of delinquent taxes before the trial court directed the county clerk to issue a tax deed.

In the present case, petitioners, unlike the petitioners in *Van Dahm*, do not have a *bona fide* purchaser to interrupt their ability to recover the property through a section 2—1401 petition. *McClandon* therefore is directly on point with the present case. Petitioners in the

present case, even assuming they had no notice of the tax deed until August 1991, had until April 1993 to file a section 2—1401 petition. Since there was no intervening *bona fide* purchaser, a successful section 2—1401 petition could have divested Dickens Central of title. However, petitioners failed to file such a petition. Since a successful petition could have resulted in a return of the property to petitioners, the indemnification statute was not applicable to petitioners. See 35 ILCS 200/21—305 (West 1996).

Since we have decided that indemnification was not available because petitioners were not "barred or in any way precluded from bringing an action for the recovery of the property" (35 ILCS 200/21—305 (West 1996)), we need not address the remainder of petitioners' arguments.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

CERDA and LEAVITT, JJ., concur.