LAKEFRONT PLUMBING AND HEATING, INC., Petitioner-Appellant, v. MARIA PAPPAS, Cook County Treasurer, as Trustee of the Indemnity Fund, Respondent-Appellee.

First District (1st Division)   No. 1—04—0363

Opinion filed March 7, 2005.

Martin J. Salzman, of Schmidt, Salzman & Moran, Ltd., of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Tatia Gibbons, Anthony O'Brien, Daniel G. Pikarski, and Michael C. Prinzi, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

Petitioner-appellant, Lakefront Plumbing & Heating, Inc. (Lakefront), seeks reversal of the trial court's determination that it was not entitled to an indemnity award for the loss of its property under sec-

tion 21—305(a)(2) of the Property Tax Code (35 ILCS 200/21—305(a)(2) (West 2000)). We review whether the trial court's decision to deny Lakefront the indemnity award was in error. First, we set out the relevant statutes and review the facts.

■ Section 21—295 of the Property Tax Code creates an indemnity fund in the event a property owner loses his or her property as a result of a tax lien foreclosure proceeding. See 35 ILCS 200/21—295 (West 2000); *McClandon v. Rosewell*, 299 Ill. App. 3d 563, 567-68, 701 N.E.2d 150 (1998). Section 21—305 of the Property Tax Code, which governs payments from the indemnity fund, sets forth certain circumstances under which a property owner may be entitled to indemnification for the loss of his or her property due to the issuance of a tax deed by the county. 35 ILCS 200/21—305 (West 2000).

Section 21—305(a) reads as follows:

"(a) Any owner of property sold under any provision of this Code who sustains loss or damage by reason of the issuance of a tax deed under Section 21—445 or 22—40 and who is barred or is in any way precluded from bringing an action for the recovery of the property shall have the right to indemnity for the loss or damage sustained, limited as follows:

(1) An owner who resided on property that contained 4 or less dwelling units on the last day of the period of redemption and who is equitably entitled to compensation for the loss or damage sustained has the right to indemnity. An equitable indemnity award shall be limited to the fair cash value of the property as of the date the tax deed was issued less any mortgages or liens on the property, and the award will not exceed $99,000. The Court shall liberally construe this equitable entitlement standard to provide compensation wherever, in the discretion of the Court, the equities warrant the action.

An owner of a property that contained 4 or less dwelling units who requests an award in excess of $99,000 must prove that the loss of his or her property was not attributable to his or her own fault or negligence before an award in excess of $99,000 will be granted.

(2) An owner who sustains the loss or damage of any property occasioned by reason of the issuance of a tax deed, without fault or negligence of his or her own, has the right to indemnity limited to the fair cash value of the property less any mortgages or liens on the property. In determining the existence of fault or negligence, the court shall consider whether the owner exercised ordinary reasonable diligence under all of the relevant circumstances." 35 ILCS 200/21—305(a) (West 2000).

Section 21—305(b)(1), which concerns the indemnity fund, reads as follows:

"Any person claiming indemnity hereunder shall petition the Court which ordered the tax deed to issue, shall name the County Treasurer, as Trustee of the indemnity fund, as defendant to the petition, and shall ask that judgment be entered against the County Treasurer, as Trustee, in the amount of the indemnity sought. The provisions of the Civil Practice Law shall apply to proceedings under the petition, except that neither the petitioner nor County Treasurer shall be entitled to trial by jury on the issues presented in the petition. The Court shall liberally construe this Section to provide compensation wherever in the discretion of the Court the equities warrant such action." 35 ILCS 200/21—305(b)(1) (West 2000).

Lakefront was a company formed in 1980 by Clifton Kimball, Sr. It was engaged in the business of providing plumbing, heating, and housing for low-income families. Kimball was the sole shareholder of Lakefront, which owned three separate "Section 8"[1] properties: 7331-33 S. Yale, Chicago (Yale Property); 351 S. Homan, Chicago; and 5907 S. Wabash, Chicago. The property at issue is the Yale Property, which is a 3-story building with 12 residential units. Kimball testified that Lakefront purchased the Yale Property from the United States Department of Housing and Urban Development (HUD) in 1984. As part of the purchase, Kimball contracted with HUD to rent only to low-income families for a period of 15 years. The property was subject to the restrictions of Section 8 and rents could not be raised unless HUD gave its permission.

Kimball testified that in 1994 the ability to raise the rent was "frozen" by HUD restrictions and that he was not able to raise the tenants' rents until the year 2000. During this period, Kimball testified that Lakefront had a "negative cash flow" and that he could not get financing to "do anything." Kimball further said the price of gas "skyrocketed," in addition to day-to-day expenses such as electric bills, maintenance, and the wages of carpenters and plumbers.

Kimball failed to pay the second installment of his 1997 taxes on the Yale Property. Additionally, he did not pay the 1998 and 1999 property taxes for the Yale Property or for the properties on Homan and Wabash, identified above. The Yale Property was sold on April 19, 1999, at the Cook County collector's annual tax sale.

Because the Yale Property, as well as the Homan and Wabash properties, was in danger of being lost permanently due to delinquent tax payments, Kimball obtained estimates of redemption for all three properties on January 30, 2001. He also received a "take-notice" on

---

[1] Section 8 is a federal rent subsidy program created by the United States Housing Act of 1937 (42 U.S.C. § 1437 (1994)) (Section 8).

the Yale Property in early February 2001. Kimball testified that he went to the county again on February 9, 2001, and got an estimate of redemption for the Yale Property which indicated that he owed $45,508.07.

At the time Kimball also learned that he had to pay on the Yale Property by June 27, 2001, and by August 30, 2001, for the other properties or the redemption period would expire and he would permanently lose his ownership interest in them. Kimball said that he tried to redeem the Yale Property first by going to the county building with a check in the amount of $23,917. He had written the property index number for the Yale Property on the check. Kimball thought he had redeemed the Yale Property but, in fact, had redeemed the Homan property by mistake.

Kimball wanted to pay the redemption amounts for all three properties at the same time but could only afford to redeem the Yale Property in April 2001. Kimball explained that he had "his lawyers and accountants working" on the transfer of funds to Lakefront from his other company, JWC Corporation, so that he could also pay off the taxes on the Homan and Wabash properties. Later, Kimball testified that this "buyout," meaning the act of "pulling" money from JWC and transferring it to Lakefront, started in January 2001, but the accountants did not finish their work until the first part of August 2001.

On cross-examination, Kimball said that he knew it would cost $45,508.78 to redeem the Yale Property. He was in charge of paying the real estate taxes for the Lakefront properties and he knew that he had to pay real estate taxes twice a year.

Kimball made a business decision not to pay the second payment installment of the 1997 tax bill for the Yale Property because he "did not have the funds to cover it." He said that he put the 1997 tax installment for this property "with the account payables that we had to pay." Kimball also made a business decision not to pay the 1998 and 1999 real estate taxes for the Yale Property. He acknowledged that he could have paid the real estate taxes due, but chose not to in order to pay "other bills" first. Kimball said it was necessary to pay the gas and electric bills to keep the heat and lights on in the unit to comply with Section 8 requirements. He also indicated that he could not sell the Yale Property due to his negative cash flow and the Section 8 contract. Kimball admitted that he "knowingly" did not pay taxes on the subject property for the years 1997, 1998, and 1999. He further admitted that it was his own mistake when he paid the redemption amount for the Homan property and redeemed the Homan property instead of the Yale Property. He also acknowledged that he could have taken a few minutes to make sure that he was paying the correct tax bill, but did not.

Kimball was asked several questions about whether Lakefront's assets could have been used to pay the real estate taxes. Kimball testified that in 1997 Lakefront owned a Mercedez Benz automobile, which was a corporate asset valued at $61,943. This vehicle was driven by Kimball's wife. Kimball purchased a new car in 1997 for $17,873, which he personally drove. Lakefront also owned two vans valued at $17,300 and $18,200 in 1997. Kimball did not consider selling any of these vehicles to pay the delinquent taxes on the Yale Property because he had a "loan against" both cars and one of the vans. Kimball also testified that, in 1997, Lakefront actually realized an increase of cash assets in the amount of $43,416. However, he explained that he made a corporate decision not to use this money to pay the real estate taxes in order to pay other bills. He further said that, at the beginning of 2001, Lakefront had an infusion of cash in the amount of approximately $1 million from selling off its assets to JWC Corporation, a company that had assets of approximately $5 million and of which Kimball was the sole owner. Kimball's intent was to use the $1 million raised in the sale of Lakefront's assets to pay the property taxes he owed.

After he lost the Yale Property, Kimball filed a petition for indemnity under section 21—305 of the Property Tax Code. 35 ILCS 200/21—305 (West 2000). In the petition, Kimball explained that he mistakenly redeemed the Homan property on April 27, 2001, "believing it to be" the Yale Property. As a result of the mistake, a tax deed was issued to SI BOO, LLC, as assignee of SI Securties. Kimball contended that due to his mistake, Lakefront lost the Yale Property "without fault or negligence of its own."

In denying the petition, the trial court pointed out that Kimball went to the county many weeks before the redemption period expired, gave the county the wrong check, went home, and then forgot about it. By failing to identify and timely remedy the error, the court noted that Kimball, who was a "bright business person running a successful company," continued to make this mistake "every successive day up until the time the redemption period expired." According to the trial court, Kimball's conduct with regard to the Yale Property constituted fault or negligence and, therefore, Lakefront did not qualify for indemnity under section 21—305(a)(2). This ruling was reflected in an order entered November 3, 2003. The trial court denied Kimball's motion to reconsider on January 7, 2004. Kimball appeals both orders.

Although the parties agree that the relevant statutory section we must interpret is 21—305(a)(2), cited above, they disagree on our standard of review from the trial court's judgment. Kimball suggests that we apply a clearly erroneous standard of review. The authority he

relies upon, however, *Brandt v. Boston Scientific Corp.*, 204 Ill. 2d 640, 792 N.E.2d 296 (2003), and *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 692 N.E.2d 295 (1998), does not involve an interpretation of the indemnity statute.

The Cook County treasurer (Treasurer), who is the trustee of the indemnity fund and respondent-appellee in this case, contends that the standard of review is whether the trial court abused its discretion. Each of the cases relied upon by the Treasurer involves dwelling units of four or less and would come within section 21—305(a)(1) as currently codified, not the section applicable here. See *Prince v. Rosewell*, 319 Ill. App. 3d 1082, 1086, 745 N.E.2d 748 (2001) (residential home); *In re Application of Kane County Collector*, 135 Ill. App. 3d 796, 798, 482 N.E.2d 161 (1985) (residential home); *Kirk v. Rosewell*, 225 Ill. App. 3d 326, 328, 587 N.E.2d 1214 (1992) (two-floor apartment building); *In re Application of the Cook County Collector*, 174 Ill. App. 3d 981, 529 N.E.2d 570 (1988) (residential home).

In 1999, the legislature amended section 21—305. 35 ILCS 200/ 21—305 (West 2000). A review of the current statute indicates that the legislature has separated property owners into two classes based on the number of dwelling units contained on the property. Under section 21—305(a)(1) of the new statute, a property owner who resided on property that contained four or less dwelling units on the last day of the period of redemption and who is equitably entitled to compensation for the loss or damage sustained has the right to indemnity. 35 ILCS 200/21—305(a)(1) (West 2000). Under this same paragraph, an equitable indemnity award cannot exceed $99,000. 35 ILCS 200/21— 305(a)(1) (West 2000). Section 21—305(a)(1) also provides the court "shall liberally construe this equitable entitlement standard to provide compensation wherever, in the discretion of the Court, the equities warrant the action." 35 ILCS 200/21—305(a)(1) (West 2000).[2]

Under section 21—305(a)(2) of the present statute, an "owner who sustains the loss or damage of *any property* occasioned by reason of the issuance of a tax deed, [and who is] without fault or negligence of his or her own, has the right to indemnity." (Emphasis added.) 35 ILCS 200/21—305(a)(2) (West 2000). In this section, the legislature added that in determining the existence of fault or negligence, "the

---

[2]We note that section 21—305(a)(1) also provides *"[a]n owner* of a property that contained 4 or less dwelling units *who requests an [indemnity] award in excess of $99,000* must prove that the loss of his or her property was not attributable to his or her own fault or negligence before an award in excess of $99,000 will be granted." (Emphasis added.) 35 ILCS 200/21— 305(a)(1) (West 2000).

court shall consider whether the owner exercised ordinary reasonable diligence under all of the relevant circumstances." 35 ILCS 200/21—305(a)(2) (West 2000); *In re Application of the County Collector*, 343 Ill. App. 3d 363, 369, 797 N.E.2d 1122 (2003).

■ Although the provisions of the Civil Practice Law (735 ILCS 5/2—101 *et seq.* (West 2002)) apply to all indemnity proceedings, neither the petitioner nor the Treasurer is entitled to a jury trial. 35 ILCS 200/21—305(b)(1) (West 2000). Section 21—305(b)(1) also provides that "[t]he Court shall liberally construe this Section to provide compensation wherever in the discretion of the Court the equities warrant such action." 35 ILCS 200/21—305(b)(1) (West 2000). Thus, while the trial court must apply a "without fault or negligence" standard in determining whether a property owner who comes within section 21—305(a)(2) has the right to indemnity, the court must also "liberally construe this Section" to provide compensation whenever, in its discretion, the equities warrant such action. 35 ILCS 200/21—305(a)(2), (b)(1) (West 2000). In this case, the Yale Property contains 12 units and clearly comes within section 21—305(a)(2). Based on an examination of the current statutory enactments, we conclude that our standard of review is whether the trial court abused its discretion in denying Lakefront's petition for indemnity. A trial court abuses its discretion "only where no reasonable man would take the view adopted by the trial court." *McClandon v. Rosewell*, 299 Ill. App. 3d 563, 567, 701 N.E.2d 150 (1998).

The evidence shows that Kimball had been a business person and had owned and operated Lakefront for nearly 20 years at the time the first tax delinquency occurred in 1997. Specifically, he testified that he was in charge of paying the real estate taxes for the Lakefront properties and he knew he had to pay real estate taxes twice a year. Kimball said he made a business decision not to pay the subject taxes in lieu of paying other bills first. Kimball admitted that the tax delinquency which resulted in the loss of the Yale Property occurred due to a conscious business decision on his part.

Kimball also admitted that he mistakenly redeemed the Homan property instead of the Yale Property by paying the redemption amount for the Homan property. Kimball knew the redemption amount for the Yale Property was $45,508.78, yet he only brought a redemption check to Cook County in the amount of $23,917. Kimball never explained why he brought a redemption check for the incorrect amount to the county. In any event, due to Kimball's mistake, the redemption period expired, the Yale Property was sold, and a tax deed for the Yale Property was issued by the county to a third party. Despite Kimball's admission that he did not pay the taxes at issue and

mistakenly redeemed the wrong property, he suggests that Lakefront was without fault or negligence and is entitled to indemnity for the Yale Property.

As pointed out above, in determining whether a petitioner was without fault or negligence under section 21—305(a)(2), the legislature has directed the trial court to consider whether the owner exercised ordinary reasonable diligence under all of the relevant circumstances. 35 ILCS 200/21—305(a)(2) (West 2000). While our research has not disclosed any authority that specifically interprets "ordinary reasonable diligence" under section 21—305(a)(2), we note that "reasonable diligence" has been defined as "[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from [a person] of ordinary prudence and activity." Black's Law Dictionary 457 (6th ed. 1990).

Here, Kimball, an experienced business person, admitted that he did not pay his 1997 property taxes, which led to the ultimate loss of the Yale Property. He further admitted that he did not pay his property taxes on the Yale Property, and the Homan and Wabash properties, for three years, specifically, 1997, 1998, and 1999. When Kimball had the opportunity to redeem the Yale Property, he went to the county and paid the redemption amount for the Homan property, $23,917, because of a "mistake." Even though Kimball knew that the redemption amount for the Yale Property was $45,508.07, by his visits to the county on January 30, 2001, and February 9, 2001, for some inexplicable reason he brought a check for about half the amount needed to redeem.

Despite clear knowledge that each property had its own redemption date, that he had to redeem the Yale Property first, and that to do so would require $45,508.07, Kimball admittedly paid the wrong amount to the county and redeemed the wrong property due to a "mistake." Kimball, a sophisticated business person, made this error approximately two months before the redemption date on the Yale Property expired, yet he did nothing to remedy it. In our view, a business person who was trying to redeem his property would not operate in this fashion. Such actions do not reflect diligence, care, and attention from a person of ordinary prudence and activity and do not amount to the exercise of ordinary reasonable diligence under the relevant circumstances. 35 ILCS 200/21—305 (a)(2) (West 2000).

Case law supports the proposition a trial court can deny indemnity where the property owner has even less business experience than Kimball does in the instant case. In *In re Application of the County Collector for Judgement & Sale Against Lands & Lots Returned*

*Delinquent for Nonpayment of General Taxes for the Year 1977 & Prior Years,* 184 Ill. App. 3d 1048, 1052, 540 N.E.2d 1077 (1989) (*Shek*), the trial court denied indemnity to the plaintiff, who argued on appeal that reversal was proper because she was the type of "unsophisticated property owner" whom the statute was designed to protect. *Shek,* 184 Ill. App. 3d at 1050. Specifically, the plaintiff argued that she failed to redeem her property because she was burdened by rebuilding the structure on the subject property and traveling between the subject premises and an apartment in Des Plaines, Illinois. She further stated that she believed her property taxes were being taken care of by means of her filing a bankruptcy petition and by making payments through an escrow account at her bank.

On review, the appellate court noted that the plaintiff had a high school education, had taken a course in real estate, and had been the sole owner of the subject property for a number of years prior to the tax sale. *Shek,* 184 Ill. App. 3d at 1052. The court also observed the plaintiff's claim that she did not receive notice of the tax sale was unsupported by the record. *Shek,* 184 Ill. App. 3d at 1052. Based on these findings, the appellate court determined that the plaintiff's failure to redeem her property was due to her own negligence. *Shek,* 184 Ill. App. 3d at 1052.

An indemnity award can also be denied to more sophisticated property owners. In *McClandon,* cited above, the plaintiff appealed the trial court's determination that she lost title to the subject property due to her own negligence. The record showed that the plaintiff was an experienced purchaser at Cook County annual scavenger tax sales and actually acquired the subject property at a 1984 delinquent tax sale. After recording the tax deed, the plaintiff never paid the real estate taxes on the subject property. The trial court found that the plaintiff knew of the tax delinquency, sought the advice of counsel on the problem, was on notice of the pendency of the tax sale before the tax deed on the subject property issued, and was aware of all the consequences that arose therefrom.

On review, the appellate court observed that the plaintiff had 16 years of education and was a professional tax buyer. She acquired the subject property through a tax deed and also had acquired other properties through tax deeds. The court also noted the plaintiff owned at least eight other properties in 1990 and spoke to representatives of a third party to whom the taxes on the subject property were sold. Finally, the court observed the plaintiff sought the advice of an attorney with regard to the property. *McClandon,* 299 Ill. App. 3d at 568. It then found the evidence supported the trial court's finding that the plaintiff contributed to the loss of the subject property through

her own negligence and fault, and, thus, the plaintiff's request for an indemnity award was properly denied. *McClandon*, 299 Ill. App. 3d at 568.

On appeal Kimball relies primarily on *Garcia v. Rosewell*, 43 Ill. App. 3d 512, 517, 357 N.E.2d 559 (1976), in support of the proposition that he was without fault or negligence. The interpretation of "without fault or negligence" in *Garcia*, however, has been significantly limited by the legislature's current codification of the "ordinary reasonable diligence" language contained in section 21—305(a)(2). 35 ILCS 200/21—305(a)(2) (West 2000).

Further, *Garcia* is distinguishable on its facts. In *Garcia*, the plaintiff had nine children and a husband, who was sick and unable to work. The plaintiff could not work because she had to take care of the children and she could not pay her 1969 and 1970 tax bills. The property, which was a single-family residence, was sold. Another person then obtained possession of the tax certificate for the sale, but not the tax deed. This person began to extort payments from the plaintiff under the representation that he owned the house and would sell it back to her. During that time, an entity, which was the rightful owner of the tax deed, sent the plaintiff notices urging redemption under the proper statutory procedures. Ultimately, the plaintiff did not redeem the property from the rightful owner of the tax deed.

There, the plaintiff filed a petition for indemnity and the trial court found that the plaintiff's failure to pursue the notices sent from the rightful owner of the tax deed constituted negligence. The appellate court considered whether the plaintiff's failure to respond to the notices urging redemption constituted fault or negligence under the statute. Citing *Glover v. Glover*, 132 Ill. App. 2d 284, 268 N.E.2d 218 (1971), the court held the meaning of "without fault or negligence" should be interpreted similarly to the words "without fault," where a party "need not be totally blameless, but the person claiming the asserted right must not have purposefully failed in a duty or engaged in conduct that materially contributed to the problem complained of." *Garcia*, 43 Ill. App. 3d at 517. The court further emphasized that each case must be decided on its own facts. *Garcia*, 43 Ill. App. 3d at 517.

Based on the facts in that case, the court concluded that the plaintiff's failure to heed the notices did not constitute fault or negligence because she was subject to conscious fraud and deception and was induced to believe the holder of the tax certificate actually owned the property. Further, the court noted the plaintiff had a limited capacity for handling business dealings under the strain of losing her home while caring for a dying husband and nine children. *Garcia*, 43 Ill. App. 3d at 517.

■ The facts in *Garcia* are readily distinguishable. Here, Kimball was a sophisticated business person who elected not to pay his taxes and who mistakenly paid the wrong redemption amount, which led to the loss of the Yale Property. No fraud, deception, or strain brought on by a need to care for family members was present. Unlike the plaintiff in *Garcia*, Kimball engaged in conduct that materially contributed to the problem complained of. While the purpose of the Indemnity Fund was established to remedy the "harsh results occasioned by a tax lien foreclosure proceeding," it was not designed to compensate experienced business people who contribute to the loss of their property. See *McClandon*, 299 Ill. App. 3d at 567-68. Based on the record before us, we cannot say that no reasonable person would take the view adopted by the trial court. Thus, it did not abuse its discretion in denying Lakefront's indemnity petition.

For the reasons above, the orders of November 3, 2003, and January 7, 2004, are affirmed.

Affirmed.

CAHILL, P.J., and O'MALLEY, J., concur.