# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Greater Pleasant Valley Church in Christ v. Pappas*, 2012 IL App (1st) 111853

---

| | |
|---|---|
| Appellate Court Caption | GREATER PLEASANT VALLEY CHURCH IN CHRIST, Petitioner-Appellant, v. MARIA PAPPAS, County Treasurer of Cook County, Illinois, as Trustee of the Indemnity Fund Created By Section 21-295 of the Property Tax Code (35 ILCS 200/21-295), Respondent-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-11-1853 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | June 29, 2012<br><br>July 29, 2012<br>July 31, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Petitioner failed to exercise reasonable diligence and was not free from fault or negligence such that it was entitled to indemnity relief pursuant to section 21-305 of the Property Tax Code in connection with a parcel of real estate petitioner purchased that had been sold for delinquent real estate taxes. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2010-COIN-25; the Hon. Maureen Ward Kirby, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Law Office of Burton A. Brown, of Chicago (Michael J. Gallagher, Burton A. Brown, Barbara A. Riley, and Abrar Azamuddin, of counsel), for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Marilyn Fusco Schlesinger, Ralph A. Proietti, and Tatia C. Gibbons, Assistant State's Attorneys, of counsel), for appellee. |
| | |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
| | Presiding Justice Quinn and Justice Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1 This appeal arises from the June 28, 2011 order entered by the circuit court of Cook County, which granted a directed finding against the petitioner-appellant, Greater Pleasant Valley Church in Christ (the Church), and in favor of the respondent-appellee, Maria Pappas, who was the Cook County treasurer acting as trustee of the indemnity fund created under section 21-295 of the Property Tax Code (35 ILCS 200/21-295 (West 2008)) (the County Treasurer). This appeal also arises from the circuit court's June 23, 2011 order quashing certain subpoenas for testimony and documents which were issued by the Church and served upon the legal counsel of the Cook County assessor's office. On appeal, the Church argues that: (1) the circuit court erred in granting a directed finding in favor of the County Treasurer; and (2) the circuit court erred in quashing the Church's subpoenas served upon the legal counsel of the Cook County assessor's office. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3 On January 25, 2005, the Church purchased a building facility located at 910 East 83rd Street in Chicago, Illinois (the property). At closing, the Church was represented by legal counsel. In connection with closing, a United States Department of Housing and Urban Development settlement statement (HUD settlement statement) was executed by the Church and the seller of the property. The HUD settlement statement specified the contract sales price of the property in the amount of $225,000, but listed certain amounts to be credited to the Church against the purchase price. The amounts credited to the Church, which reduced

the total price due to the seller, included county taxes owed on the property in the amounts of $18,799.86 for 2004 and $1,287.66 for 2005.

¶ 4        Subsequently, the Church invested resources in rehabilitating the property, but failed to pay the 2004 real estate taxes owed on the property.

¶ 5        On June 16, 2006, at a public auction, the unpaid 2004 taxes for the property were sold to Phoenix Bond & Indemnity Company (Phoenix Bond) in the amount of $24,031.15.

¶ 6        On December 7, 2006, upon application by the Church, the Illinois Department of Revenue issued a "non-homestead property tax exemption certificate" approving the Church for 100% exemption status for the 2006 tax assessment year.

¶ 7        On February 18, 2009, Robert Skinner, Jr., pastor of the Church (Pastor Skinner), received by certified mail a notice from the tax buyer, Phoenix Bond, that the property had been sold due to delinquent taxes. The notice specified that the period of redemption from the sale of the property would expire on June 16, 2009, and that Phoenix Bond, pursuant to a petition for a tax deed, would be entitled to the title and possession of the property should the Church fail to redeem the property by that date. Thereafter, on February 20, 2009, Jimmy Croft, a deacon at the Church (Deacon Croft), contacted the Cook County assessor's office for an "estimate of redemption" for the property, which by then totaled more than $67,400. According to Deacon Croft, however, the representatives at the Church were led to believe by Rita Carthans (Carthans) of the Cook County assessor's office that "everything was going to work out."

¶ 8        Subsequently, the Church failed to pay the delinquent taxes within the redemption period, which expired on June 16, 2009. As a result, on November 25, 2009, the trial court, pursuant to a petition for tax deed filed by Phoenix Bond, entered an order for the issuance of a tax deed conveying title of the property to Phoenix Bond.

¶ 9        On January 31, 2010, the Church and Phoenix Bond entered into a "repurchase agreement" whereby the Church would remain in possession of the property pending the outcome of a petition for indemnity, which was to be filed by the Church under section 21-305 of the Property Tax Code (the Code) (35 ILCS 200/21-305 (West 2008)), and thereafter to reacquire title to the property. A valuation report prepared by Illinois Appraisal Services, Inc. (Illinois Appraisal Services), on behalf of Phoenix Bond appraised the property at a fair market value of $640,000 as of April 30, 2010.

¶ 10       On May 26, 2010, the Church filed the instant petition for indemnity against the County Treasurer, arguing that the Church was entitled to indemnity pursuant to section 21-305 of the Code for the fair market value of the property of $640,000 "on or about November 25, 2009"; that the Church had failed to pay the 2004 real estate taxes or redeem the sale of those taxes because it was led to believe that the property was tax exempt; and that "the standard of proof is freedom from fault or negligence." In response, the County Treasurer put forth its own expert's report that valued the property at $184,000 as of November 25, 2009, when the tax deed conveyed title of the property to Phoenix Bond.

¶ 11       On March 10, 2011, the Church filed a motion to set a trial date, stating that "all discovery requested and engaged in [had] been completed," and that "the issues [had] been framed and the matter [was] now ready for trial on a date certain."

¶ 12    On May 17, 2011, the trial court entered an order setting the case for trial on June 28, 2011 and June 29, 2011.

¶ 13    On June 14, 2011, the Church issued and served two subpoenas for testimony and documents upon Khang Trinh (Trinh), legal counsel of the Cook County assessor's office. The subpoenas sought information relating to the initial and revised assessments of the property for the 2010 tax year. On June 20, 2011, the Cook County assessor filed an appearance in the case, along with a motion to quash the subpoenas served upon Trinh (motion to quash). The motion argued that the information sought by the subpoenas was irrelevant and inadmissible.

¶ 14    On June 23, 2011, a hearing on the motion to quash was conducted. In granting the motion to quash, the trial court found that the information sought by the subpoenas was not relevant to the issues framed by the pleadings; that the Church's petition for indemnity had already alleged a fair market value of the property at $640,000; and that Trinh's lay witness testimony regarding the valuation of the property was irrelevant to the issues in the case. The court further found that the assessment of the property by the Cook County assessor's office was only "an initial pass" and that any subsequent revisions in valuation of the property had not yet been finalized. The trial court also found that the information sought by the subpoenas regarding the property's assessment for the 2010 tax year was irrelevant to the date of issuance of the tax deed to Phoenix Bond, which occurred in November 2009. The trial court also questioned the Church's timing in raising this issue. The court stated that the Church's March 10, 2011 motion to set a trial date gave the impression that there were no other open discovery issues. The trial court then denied the Church's request to certify the matter for interlocutory appeal, stating:

> "I have set this matter for a bifurcated trial. Liability is on June 28th. This argument all goes to damages, which depending on the Court's ruling on the 28th was going to be scheduled for June 29th. I don't think there is any reason to delay. I don't think this is relevant as framed by your pleadings. I think it's designed to delay. I think it's taking us down–it's a red herring. So I'm not going to certify it. That's my reason."

¶ 15    On June 28, 2011, a bench trial commenced on the liability phase of the case. The Church presented the testimony of three witnesses–Pastor Skinner, Deacon Croft, and another deacon of the Church, Richard Bowens (Deacon Bowens)–all of whom were corporate officers of the Church. At trial, legal counsel for the Church elicited testimony from Pastor Skinner that the estimate of tax redemption for the property in 2009 amounted to over $67,400. Counsel then asked Pastor Skinner whether the Church had "that money in [its] account" at that time, to which legal counsel for the County Treasurer objected and the following exchange ensued:

> "MR. PROIETTI [counsel for County Treasurer]: Your Honor, the petition is a six-page petition and the ground is that there was confusion with the church as to whether they were tax exempt. Discovery was not taken on financial wherewithal of the church. This would be a basis that has not been pled.
>
> THE COURT: What do you say to that?
>
> MR. BROWN [counsel for the Church]: That's incorrect. Ms. Schlesinger [co-counsel for the County Treasurer] asked him if they had the money to pay that in his

deposition transcript. We can look through that. It's like a one-line thing, and it's a–

THE COURT: Well, it may have been a question they asked in discovery. But Mr. Proietti's objection is that you are really limited to what you've alleged in your petition, and your petition does not allege that they had lack of financial wherewithal to redeem. I think that's your objection.

MR. PROIETTI: Yes, it is.

MR. BROWN: I agree that's the objection, but the answer to that, on our part, is that the statute also requires that there has been no other avenue other than the indemnity petition with which to save your property; and paying the estimate of redemption would certainly be that savior, if you will. So asking him did you have the money to pay that answers that question under the statute.

THE COURT: I'm of the view that you're limited to what you've pled in your–

Mr. BROWN: If that's the [c]ourt's ruling.

THE COURT: Yes.

MR. BROWN: All right."

¶ 16       At the close of the Church's case-in-chief, counsel for the County Treasurer raised an oral motion for a directed finding (735 ILCS 5/2-1110 (West 2008)), which the trial court granted. The trial court found that although the Church had met its *prima facie* case by putting forth some evidence on all of the essential elements of the case and had satisfied the initial inquiry required by a section 2-1110 motion for a directed finding, the court had to consider the case in totality. After considering and weighing all of the evidence, and the credibility of the Church's three witnesses, the trial court found that the Church had failed to satisfy the second step of the inquiry of a motion filed under section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2008)) in order to avoid a directed finding. Specifically, the trial court found that, based on the evidence, the Church had not exercised reasonable diligence and was not free from fault or negligence so as to be entitled to indemnity relief under the Code. The trial court then entered judgment in favor of the County Treasurer.

¶ 17       On June 28, 2011, the Church filed a notice of appeal before this court.

¶ 18                                                    ANALYSIS

¶ 19       The relevant issues on appeal before us are: (1) whether the trial court erred in granting a directed finding in favor of the County Treasurer at the close of the Church's case-in-chief; and (2) whether the trial court erred in quashing pretrial subpoenas served upon the assessor's counsel by the Church.

¶ 20       We first determine whether the trial court erred in granting a directed finding in favor of the County Treasurer at the close of the Church's case-in-chief.

¶ 21       The Church argues that the trial court erred in granting the County Treasurer's motion for a directed finding because the facts and circumstances presented at trial supported a finding that the Church exercised ordinary diligence in attempting to cure its 2004 tax delinquency problem. Further, the Church contends that the trial court erred in excluding

-5-

certain evidence at trial on the basis that those facts were not pled in the Church's petition for indemnity. The Church maintains that, as a result of the trial court's "narrow and erroneous" ruling that the admissibility of the evidence was limited to the facts pled in the petition for indemnity, the Church was deprived of its opportunity to present certain evidence to meet the necessary standard of proof.

¶ 22    The County Treasurer counters that the evidence in the record and relevant case law supported the trial court's conclusion, and thus, the trial court properly granted its motion for a directed finding against the Church.

¶ 23    Under Illinois case law, the applicable standard of review in determining the grant or denial of a petition for indemnity under section 21-305 of the Code is abuse of discretion. See *Lakefront Plumbing & Heating, Inc. v. Pappas*, 356 Ill. App. 3d 343, 350, 826 N.E.2d 464, 469 (2005); *McClandon v. Rosewell*, 299 Ill. App. 3d 563, 567, 701 N.E.2d 150, 152 (1998). An abuse of discretion occurs only where "no reasonable man would take the view adopted by the trial court." *McClandon*, 299 Ill. App. 3d at 567, 701 N.E.2d at 152. However, a trial court's ruling on a section 2-1110 motion for a directed finding (735 ILCS 5/2-1110 (West 2008)) requires the application of a different standard of review. In ruling on a motion for a directed finding, the court must engage in a two-step analysis: "(1) the court must determine as a matter of law whether the [petitioner] has presented a *prima facie* case–'[t]hat is to say, did the [petitioner] present some evidence on every element essential to the cause of action?'; and (2) if the [petitioner] has presented some evidence on each element, the court then must consider and weigh the totality of the evidence presented, including evidence which is favorable to the [respondent]." *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 39 (citing *527 S. Clinton, LLC v. Westloop Equities, LLC*, 403 Ill. App. 3d 42, 52, 932 N.E.2d 1127, 1137 (2010)). If the trial court, as in this case, proceeds to the second step of the two-step analysis in determining whether to grant or deny the motion for a directed finding, its decision will not be disturbed on appeal unless it is against the manifest weight of the evidence. *527 S. Clinton, LLC*, 403 Ill. App. 3d at 53, 932 N.E.2d at 1137. A ruling is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if it is unreasonable, arbitrary, or not based on the evidence presented. *Law Offices of Colleen M. McLaughlin*, 2011 IL App (1st) 101849, ¶ 43.

¶ 24    Under section 21-305(a) of the Code, any owner of property sold under the provisions of the Code:

> "who sustains loss or damage by reason of the issuance of a tax deed *** and who is *barred or is in any way precluded from bringing an action for the recovery of the property* shall have the right to indemnity for the loss or damage sustained, limited as follows:
>
> * * *
>
> (2) [a]n owner who sustains the loss or damage of any property occasioned by reason of the issuance of a tax deed, *without fault or negligence of his or her own*, has the right to indemnity limited to the fair cash value of the property less any mortgages or liens on the property. *In determining the existence of fault or*

*negligence, the court shall consider whether the owner exercised ordinary reasonable diligence under all of the relevant circumstances.*" (Emphases added.) 35 ILCS 200/21-305(a) (West 2008).

In construing the meaning of "without fault or negligence" under section 21-305, we will not give it the broadest legal interpretation. See *In re Application of the County Collector*, 343 Ill. App. 3d 363, 369, 797 N.E.2d 1122, 1127 (2003). "To do so would make the section meaningless, as any owner who has lost his or her property by the issuance of a tax deed is to some extent at fault." *Id.* The phrase, in this context, cannot be taken to mean "blameless," but, instead, is taken to mean that the petitioner " 'must not have purposefully failed in a duty or engaged in conduct that materially contributed to the problem complained of.' " *Id.* at 370, 797 N.E.2d at 1127 (quoting *Garcia v. Rosewell*, 43 Ill. App. 3d 512, 517, 357 N.E.2d 559, 563 (1976)).

¶ 25    As a preliminary matter, we note that the plain language of section 21-305 of the Code provides that a petitioner may have the right to indemnity for any loss or damage of property if he sustained loss or damage of the property by the issuance of a tax deed and "is barred or is in any way precluded from bringing an action for the recovery of the property." 35 ILCS 200/21-305(a) (West 2008). It is undisputed in the case at bar that the Church lost its property through the issuance of a tax deed by the trial court on November 25, 2009. Further, the Church has been "barred" or "precluded" from bringing an action for the recovery of the property which would have enabled the Church to seek indemnity relief under the Code. Under section 22-45 of the Code (35 ILCS 200/22-45 (West 2008)), a tax deed order is subject to direct and collateral attack. See *Demos v. Pappas*, 2011 IL App (1st) 100829, ¶ 19. Although the record reveals no indication that the Church had filed a section 2-1401 petition to vacate the tax deed at issue, the Church's petition for indemnity specifically noted that its "careful review of the court file and facts failed to reveal any grounds upon which to file a [m]otion to [v]acate the [t]ax [d]eed." Indeed, the transcript of the trial proceedings reveals detailed comments made by the Church's counsel explaining why a section 2-1401 petition to vacate the tax deed could not have been filed after the tax deed was issued. The Church's counsel, in opposing the County Treasurer's motion for a directed finding, noted that a section 2-1401 petition to vacate the tax deed was not filed because the Church lacked grounds upon which to file it and that it was not required to file a frivolous, and thus sanctionable, section 2-1401 petition. Thus, the Church had satisfied the statutory requisite under section 21-305(a) of the Code that it be "barred or *** precluded from bringing an action for the recovery of the property." 35 ILCS 200/21-305(a) (West 2008). *Cf. In re Application of County Treasurer & ex officio County Collector*, 301 Ill. App. 3d 883, 889, 704 N.E.2d 1003, 1007 (1999) (indemnification statute not applicable because a successful section 2-1401 petition to vacate tax deed could have resulted in a return of the property to the petitioners). Therefore, section 21-305 of the Code is applicable to the instant case, and we proceed to determine whether the trial court properly found that the Church had not exercised reasonable diligence and was not without fault or negligence under section 21-305 of the Code.

¶ 26    The evidence adduced at trial shows that the Church was represented by legal counsel at closing on the property in January 2005. The HUD settlement statement, which was executed

by the Church and the seller of the property, specified certain sums of county taxes that were owed on the property but given to the Church as a credit against the purchase price of the property. At trial, Deacons Croft and Bowens testified that they were present at the closing on the property. According to Deacon Croft, the attorney representing the Church at the closing explained to him and other representatives of the Church that the Church would be responsible for paying the property taxes that had been owed by the seller of the property. Evidence also reveals that on December 7, 2006, the Illinois Department of Revenue issued a "non-homestead property tax exemption certificate" approving the Church for 100% exemption status for the 2006 tax assessment year. However, there was no evidence that any tax exemption certificates were issued for 2004 or 2005. The record shows that on February 18, 2009, Pastor Skinner signed for and received by certified mail a notice from the tax buyer, Phoenix Bond, that the property had been sold due to delinquent taxes. The notice specified that the period of redemption was to expire on June 16, 2009, after which Phoenix Bond would be entitled to the title and possession of the property pursuant to a petition for a tax deed. Deacon Croft testified that, on February 20, 2009, he contacted the Cook County assessor's office to obtain an estimate of redemption. Witness testimony also revealed that in March 2009, representatives of the Church met with a representative of the tax buyer, Phoenix Bond, but that they did not engage in any discussions regarding communications the Church had with Carthans of the Cook County assessor's office.

¶ 27    Based on the foregoing facts, the trial court, in granting the County Treasurer's motion for a directed finding, found that the Church did not exercise reasonable diligence and was not free from fault or negligence under section 21-305 of the Code. Specifically, the trial court described Pastor Skinner and Deacons Croft and Bowens, who were corporate officers of the Church, as "very articulate, bright individuals who have served in the military, raised families, retired from other professions, and are responsible for the day-to-day affairs of the workings of the corporate church." The trial court remarked that the Church also had the benefit of legal counsel at the closing in 2005, that the corporate officers understood the Church's responsibility to pay the taxes owed on the property, that they understood the need to "apply for a property exemption," and that they had obtained an estimate of redemption but had failed to act upon it. After considering all the evidence, witness testimony, and the Church representatives' "comprehension of property taxes and the duty to pay them," the trial court found it unreasonable for the corporate officers of the Church to "put stock on some statement from [Carthans]" in believing that the Church did not have to pay the outstanding taxes.

¶ 28    In *Lakefront Plumbing & Heating*, the petitioner lost his property after he failed to pay outstanding taxes, after which the taxes were sold at a public sale. *Lakefront Plumbing & Heating*, 356 Ill. App. 3d at 346, 826 N.E.2d at 466. Thereafter, the petitioner obtained an estimate of redemption for the property, which indicated that he owed over $45,000. *Id.* at 347, 826 N.E.2d at 466. During the redemption period, the petitioner attempted to redeem the property by submitting a check of about $23,000 to the county, which erroneously redeemed another property unrelated to the property at issue in *Lakefront Plumbing & Heating*. *Id.* When the redemption period expired and a tax deed of the subject property was issued to a third party, the petitioner filed a petition for indemnity under section 21-305 of

the Code, alleging that he was " 'without fault or negligence' " in losing this property because he had mistakenly redeemed the wrong property. *Id.* at 348, 826 N.E.2d at 467.

¶ 29    In denying the petition for indemnity, the trial court found that, before the redemption period expired, the petitioner "gave the county the wrong check, went home, and then forgot about it." *Id.* The trial court found that the petitioner's conduct constituted fault or negligence, noting that, by failing to identify and timely remedy the error, the petitioner, as a " 'bright business person running a successful company,' " continued to make this mistake every day until the redemption period expired. *Id.* In affirming the trial court's decision, the reviewing court found that the petitioner, as an experienced business person, elected not to pay the property taxes which led to the ultimate loss of the property. *Id.* at 351, 826 N.E.2d at 469. The reviewing court further found that the petitioner had an opportunity to redeem the property, but that, inexplicably, brought the wrong amount of money to the county and redeemed the wrong property. *Id.*, 826 N.E.2d at 470. Despite the fact that this error was made approximately two months prior to the expiration of the redemption period, the petitioner failed to remedy the situation. *Id.* Such conduct, the reviewing court noted, did not "reflect diligence, care, and attention from a person of ordinary prudence and activity and [did] not amount to the exercise of ordinary reasonable diligence under the relevant circumstances." *Id.* Thus, the reviewing court held, the petitioner was not entitled to an indemnity award for the loss of his property because he had engaged in conduct which "materially contributed to the problem complained of." *Id.* at 354, 826 N.E.2d at 472.

¶ 30    Like the petitioner in *Lakefront Plumbing & Heating*, representatives of the Church in this case failed to pay the 2004 taxes which led to the ultimate loss of the property. At closing, the Church had the benefit of legal counsel, who had explained to the Church representatives that the Church was responsible for paying the taxes owed on the property. In fact, the Church received over $20,000 of credit against the purchase price of the property for the purpose of paying the taxes owed. Subsequently, the Church received a tax exemption certificate from the Illinois Department of Revenue only for the 2006 assessment year, but no certificates were issued for 2004 and 2005. Four months prior to the expiration of the redemption period, Deacon Croft obtained an estimate of redemption from the Cook County assessor's office. However, none of the representatives of the Church acted upon this knowledge. Instead, similar to the petitioner in *Lakefront Plumbing & Heating*, they turned a blind eye to the situation even though time was running out in the redemption period. Instead, they opted to rely on communications with Carthans that "everything was going to work out." Based on a follow-up conversation with Carthans in November 2009, five months *after* the redemption period had expired, the representatives continued to believe that "everything would work out for [the Church]."

¶ 31    We find that the evidence in the record supported the trial court's finding that Church representatives understood their duty to pay the property taxes, but that they unreasonably "put stock [in]" statements made by Carthans believing that they did not have to pay the outstanding taxes. Nothing in the record indicates that Carthans at any point informed Church representatives that the issue had been affirmatively resolved. The conduct of the Church representatives materially contributed to the problem complained of and did not constitute the exercise of reasonable diligence under the relevant circumstances. Based on

our review of the evidence, we cannot say that the trial court's findings were against the manifest weight of the evidence or that no reasonable man would take the view adopted by the trial court in denying indemnity relief under section 21-305 of the Code. See also *Malmloff v. Kerr*, 227 Ill. 2d 118, 879 N.E.2d 870 (2007) (petitioner was not equitably entitled to an indemnity award under section 21-305 of the Code where he had no physical, mental or financial problems preventing payment of taxes and his own conduct contributed to the loss of his home).

¶ 32    Nonetheless, the Church argues that evidence exists in the record to support the conclusion that Church representatives exercised ordinary, reasonable diligence in attempting to cure the 2004 tax delinquency problem. They continue to argue that they had been led to believe that the Cook County assessor's office had resolved the situation in their favor. We decline to disturb the trial court's ruling on this unsubstantiated basis.

¶ 33    We find no reason to reverse the trial court's decision based on the Church's assertions that Pastor Skinner, Deacon Croft and Deacon Bowens were unsophisticated individuals who did not understand the Church's responsibility to pay the property taxes. Here, the trial court specifically found Pastor Skinner and Deacons Croft and Bowens to be bright, articulate, successful individuals, who were responsible for the "day-to-day affairs of the workings of the corporate church." It further found that these individuals understood the Church's responsibility to pay the taxes owed on the property, that they understood the need to "apply for a property exemption," and had the knowledge to obtain an estimate of redemption but failed to act upon it. We decline to reweigh the evidence or substitute our judgment for that of the trier of fact. See *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434, 581 N.E.2d 656, 661 (1991); *Law Offices of Colleen M. McLaughlin*, 2011 IL App (1st) 101849, ¶ 39 ("[i]n a bench trial, the trial court sits as the trier of fact, hearing the witnesses and reviewing the direct presentation of the evidence, and it therefore is in the best position to make credibility determinations and factual findings").

¶ 34    In arguing for reversal, the Church further asserts that it was unfairly prejudiced because it was prevented from presenting "more evidence" at trial in order to meet its standard of proof under section 21-305 of the Code, when the trial court made a "narrow and erroneous ruling" that evidence was admissible at trial only if the facts had been pled in the Church's petition for indemnity. Rather, it contends that "no rule or law requires all facts presented at trial to be pled in a complaint," noting that Illinois allows liberal amendments to pleadings (735 ILCS 5/2-616(c) (West 2008)). Specifically, the Church points out that the trial court sustained an objection by counsel for the County Treasurer during Pastor Skinner's testimony, which prevented counsel for the Church from eliciting testimony regarding the Church's financial wherewithal to redeem the property in 2009. The Church contends that the trial court mistakenly assumed that the evidence was being offered to show that the Church lacked the financial means to redeem the property. They claim that the evidence was proffered to show that the Church was not trying to avoid paying taxes, that it had the ability to pay, but that it had failed to do so because of the misleading advice from Carthans.

¶ 35    The County Treasurer counters that the Church forfeited this issue for review on appeal because it had failed to either seek leave to amend its pleadings or make an offer of proof as to what information the Church had hoped to enter into evidence by pursuing the line of

questioning at issue during Pastor Skinner's testimony. Notwithstanding forfeiture, the County Treasurer argues that the Church's financial wherewithal was not sufficiently related to the matters pled in the Church's petition for indemnity "based on the limited information that [the Church] offered during arguments on the objection," and that the Church cannot demonstrate that the trial court abused its discretion in excluding the evidence.

¶ 36    We find the County Treasurer's arguments regarding forfeiture to be without merit, where, as the Church clarifies in its reply brief before this court, the Church cited the provisions of the Illinois pleading amendment statute (735 ILCS 5/2-616(c) (West 2008)) as "an example to further prove the trial court misapprehended the purpose of the pleadings by limiting [the Church] to only that evidence which was pled in its [petition for indemnity]." Here, the Church is not arguing that it should have been allowed to amend its petition for indemnity, but is rather claiming that the trial court erroneously excluded the evidence at issue on the basis that it did not conform to what was pled in the petition for indemnity.

¶ 37    We find no merit to the County Treasurer's assertion of forfeiture on the alternative basis that counsel for the Church failed to "make an offer of proof" in response to the objection sustained by the trial court. "The purpose of an offer of proof is to disclose the nature of the offered evidence to which objection is interposed, for the information of the trial judge and opposing counsel, and to enable the reviewing court to determine whether the exclusion was erroneous and harmful." *Sekerez v. Rush University Medical Center*, 2011 IL App (1st) 090889, ¶ 68. "An offer of proof is generally required to preserve for review a question as to whether evidence was properly excluded." *Id.* "However, an offer of proof may not be necessary where the record clearly shows that the trial court already has before it all of the evidence necessary to make an assessment regarding admissibility and possible prejudice from exclusion." *Id.* Based on our review of the trial transcript, we find that counsel for the Church made a sufficient offer of proof regarding the excluded evidence, by specifically stating that: "the statute also requires that there has been no other avenue other than the indemnity petition with which to save your property; and paying the estimate of redemption would certainly be that savior, if you will. So asking [Pastor Skinner] did you have the money to pay that answers that question under the statute." Assuming, *arguendo*, that this explanation was not an adequate "offer of proof," the admission of other evidence at trial showing that the Church had the financial ability to pay the 2004 delinquent taxes–the fact that it had spent $221,000 rehabilitating the property and had received $20,000 in credit at closing for the purpose of paying the taxes owed–was sufficient to preserve the issue for review.

¶ 38    Turning to the merits of this issue, the Church argues that the trial court failed to consider "all relevant circumstances" under section 21-305 of the Code because it improperly excluded relevant evidence of the Church's financial ability to redeem the property in 2009, on the basis that the Church's "financial wherewithal" was not pled in its petition for indemnity.

¶ 39    "To determine relevancy, the trial court must interpret the evidence in light of factual issues raised by the pleadings." *Petraski v. Thedos*, 2011 IL App (1st) 103218, ¶ 140. "A plaintiff's complaint frames the case's issues." *Id.* "Evidence is only relevant if it proves a fact in controversy or renders a matter at issue more or less probable." *Id.* Evidence must be

-11-

relevant to be admissible at trial. *Id.* A trial court's determination of the relevancy of the evidence will not be disturbed on appeal absent an abuse of discretion. *Bergman v. Kelsey*, 375 Ill. App. 3d 612, 630, 873 N.E.2d 486, 503-04 (2007).

¶ 40　　In the instant case, the Church's petition for indemnity requested relief under section 21-305 of the Code on the ground that the Church failed to pay the 2004 taxes because "it was led to believe that the property in question was tax exempt." However, the issue of whether the Church had the financial ability to redeem the property in 2009 was not pled in the petition for indemnity. Thus, any evidence introduced to address the "financial wherewithal" of the Church is irrelevant, and consequently, inadmissible. Therefore, the trial court did not abuse its discretion in excluding testimonial evidence of the Church's financial ability to redeem the property in 2009. See *Petraski*, 2011 IL App (1st) 103218, ¶ 141 (evidence relating to an officer's mental health was not relevant where the third amended complaint was devoid of any references to this issue). In so holding, we are mindful of the Church's argument on appeal that the trial court mistakenly assumed that the evidence was being offered to show that the Church lacked the financial means to redeem the property. They argue that the evidence was proffered to show that the Church was not trying to avoid paying taxes, that it had the ability to pay, but that it had failed to do so because of the misleading advice from Carthans. As discussed, the trial court found that the Church was not without fault or negligence in the loss of its property, finding it unreasonable for the Church representatives to have relied so completely on statements made by Carthans without making any attempts to confirm the accuracy of the statements. However, the trial court made no finding whatsoever that the Church failed to pay the 2004 taxes because of a deliberate attempt to avoid paying. The court had evidence that the Church spent $221,000 rehabilitating the property and received over $20,000 in credit at closing for the purpose of paying those taxes. Thus, we find that whether the Church had the financial ability to redeem its property in 2009 did not bear upon the overall conduct of Church representatives and their role in failing to act reasonably. In fact, the court found their actions to be unreasonable and not free from fault or negligence. Accordingly, the trial court properly excluded the irrelevant evidence at issue.

¶ 41　　We next address the issue of whether the trial court erred in quashing pretrial subpoenas served upon Trinh by the Church.

¶ 42　　The Church argues that the trial court erred in granting the County Treasurer's motion to quash two pretrial subpoenas for testimony and documents served upon Trinh, the legal counsel of the Cook County assessor's office. The subpoenas sought information relating to the initial and revised assessments of the property for the 2010 tax year. The Church claims specifically that the trial court's ruling stemmed from its erroneous belief that the subpoenas were discovery subpoenas, rather than trial subpoenas, and that they should be quashed because the Church's petition for indemnity made no allegations regarding the Cook County assessor's assessment of the monetary value of the property. In the Church's opening brief before this court, the Church repeatedly claims that the subpoenas served upon Trinh "would help establish the Church's $640,000 appraisal of the property," and that Trinh's testimony "was relevant to establishing the value of the property." A review of the transcript of the June 23, 2011 hearing on the motion to quash also reveals that counsel for the Church represented

to the trial court that Trinh's testimony was relevant to the "valuation" of the property.

¶ 43    Reviewing courts "will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions." *Condon v. American Telephone & Telegraph Co.*, 136 Ill. 2d 95, 99, 554 N.E.2d 206, 208 (1990). "Courts of review will also ordinarily not consider issues that are not essential to the disposition of the causes before them [citation], or where the results are not affected regardless of how the issues are decided [citations]." *Id.*

¶ 44    We find this issue to be moot because it pertains to the valuation of the property in determining damages for the Church, an issue that was never reached by the trial court in its ruling that the Church was not entitled to indemnity relief under section 21-305 of the Code. The trial court, without objections from the parties, bifurcated the trial into two days: the first day was the liability phase of the case; and the second day was the damages phase of the case. Because the trial court resolved the liability phase of the case by issuing a directed finding in favor of the County Treasurer, the second day of trial was never conducted to reach the issue of valuation of the property for the purpose of determining damages. Thus, regardless of how we resolve the issue of whether the trial court erred in quashing the subpoenas served upon Trinh, whose testimony the Church claims was only relevant to the valuation of the property, the outcome of this court's decision in affirming the trial court's ruling on the liability phase of the case would not be affected. Therefore, this issue is moot. See *id.* at 100, 554 N.E.2d at 208 (finding that any issue regarding damages was moot after the trial court granted a directed verdict in favor of the defendant); see also *Economy Fire & Casualty Co. v. Brumfield*, 384 Ill. App. 3d 726, 734, 894 N.E.2d 421, 428 (2008) (finding that issues of damages were moot where the defendant did not breach its duty to defend the plaintiff).

¶ 45    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 46    Affirmed.